THOMAS WALLACE TUCKER v. THE STATE.

No. 21387. Delivered February 12, 1941.
Rehearing Denied March 26, 1941.

The opinion states the case.

*H. R. Bishop,* of Fort Worth, for appellant.

*Marvin H. Brown, Jr.,* Criminal District Attorney, and *Day-*

*ton Moses*, Assistant Criminal District Attorney, both of Fort Worth, and *Lloyd W. Davidson*, State's Attorney, of Austin, for the State.

CHRISTIAN, Judge.

The offense is murder; the punishment, confinement in the penitentiary for fifty years.

It was charged in the indictment, in substance, that appellant, with malice aforethought, killed Audrey Frances Corbin by stabbing and cutting her with a knife.

Deceased and appellant were married in Oklahoma City on the 15th of March, 1937. In May, 1938, they separated in Fort Worth and the deceased filed a suit for divorce in the district court of Tarrant County. According to the testimony of the State, deceased was the breadwinner of the family during the time she and appellant were married. It was the theory of the State, circumstantially supported, that after deceased had obtained her divorce from appellant he followed her to Fort Worth for the purpose of killing her in the event she refused to return to him as his wife. It was appellant's theory, supported by his testimony, that he sought deceased primarily for the purpose of asking her whether she had obtained a divorce and whether she intended to marry Buddy Benton. Appellant disclaimed any intention of killing the deceased, and testified in effect that she was accidentally stabbed by a butcher knife in his hand while he was defending himself against an attack on the part of Buddy Benton which caused him to believe that he was in danger of losing his life or suffering serious bodily injury.

The homicide occurred on the 16th of April, 1940, at the home of Mrs. Theoda Benton, who was the mother of Buddy Benton. According to the testimony of Mrs. Benton, appellant came to her home, and, after some conversation with deceased, stabbed deceased and Buddy Benton to death with a butcher knife. It was her version that appellant was not being attacked at the time. In short, if the testimony of the witness was to be accepted, the killing of deceased and Benton was unprovoked. Appellant testified that after he had talked to deceased, Buddy Benton advanced upon him with a large pair of scissors; that he (appellant) pulled the butcher knife from the inside of his leather jacket for the purpose of defending himself against Benton; that as Benton continued to advance deceased ran between them and received a cut from the butcher knife; that deceased was accidentally cut while he (appellant) was defend-

ing himself against the assault by Benton with the large pair of scissors.

Bill of exception No. 3 is concerned with appellant's objection to the introduction in evidence of the following statement found in the dying declaration of the deceased: "He cut me with a knife for no reason." We think the objection was properly overruled. We quote the language of Judge Lattimore in Finley v. State, 244 S. W. 526:

"That part of said dying declaration at which the objection was directed was the sentence 'he shot me in cold blood.' The objection was that said statement was but the opinion of the deceased as to the condition of the mind of the defendant at the time of the shooting.

"There have been so many pronouncements by this court upon the general subject of dying declarations that we do not deem it necessary to go into an extended discussion of the reasons advanced for admitting same, nor do we desire to attempt to lay down any limits within which such declaration must be confined, and beyond which it must not go. While we have not found in our authorities in this State a decision passing upon the acceptance or rejection of a statement in the exact words of the one here involved, there are many which pass upon cases whose facts, and the principles announced, are analogous. In the following cases the deceased stated in his dying declaration, in substance, that the accused shot him for nothing, and in all the cases this was held admissible. Roberts v. State, 5 Texas App. 150; Carter v. State, 8 Texas App. 372; Lockhart v. State, 53 Texas Cr. R. 593; 111 S. W. 1024; Craft v. State, 57 Texas Cr. R. 261, 122 S. W. 547; Corbitt v. State, 72 Texas Cr. R. 398, 163 S. W. 436; Woods v. State, 87 Texas Cr. R. 354, 221 S. W. 276. In Sims v. State, 36 Texas Cr. R. 156, 36 S. W. 256, a dying declaration to the effect that 'Sims ought not to have shot me' was held admissible, and in Connell v. State, 46 Texas Cr. R. 261, 81 S. W. 746, a similar statement to the effect that 'he had no cause for doing it' was held admissible. In McBride v. People, 5 Colo. App. 91, 37 Pac. 953, the Supreme Court of Colorado affirmed the introduction in evidence as part of a dying declaration of a statement similar to that here complained of, asserting in the opinion that—

"Such statement was 'merely intended to ilustrate the lack of provocation and wantonness in which the appellant did the act; it was descriptive of the manner in which the act was committed; it conveyed the idea that the appellant disregarded the

claims of humanity, and without giving any warning shot him. It was a statement of fact by way of illustration.

"We think the declaration fairly well within the often used phase that an opinion which is a shorthand rendering of the facts is admissible. We can see no ground of objection to this statement that could not have been urged in any of the cases above cited. To assert that one shot another for nothing is to state that the shooting was without cause, and was wanton and without justification. Appellant cites only the cases of Bateson v. State, 46 Texas Cr. R. 34, 80 S. W. 88, and Williams v. State, 40 Texas Cr. R. 565, 51 S. W. 224, as authority for his contention. The Bateson case was disapproved by this court in Clark v. State, 56 Texas Cr. R. 293, 120 S. W. 179, in which latter case we held that it was permissible to prove for the defense a statement which was a part of the res gestae, to the effect that the accused shot in self-defense. We think the language used in both the Bateson and Williams cases much more objectionable than that here complained of, and that neither of them should be carried to the extent of being held as authority to reject the statement which is made the basis of this objection. We are of opinion that there was no error in admitting the entire dying declaration."

We find in the record several exceptions to the charge of the court which do not appear to have been authenticated by the trial judge. However, bill of exception No. 1 brings forward the exceptions to the charge with the following statement appended to the bill:

"Said above written objections and exceptions were filed with the clerk of said court before the main charge was read and delivered to the jury and the court did thereafter amend his main charge to the jury and again presented the same to the defendant for his objections and exceptions and the defendant again, before said main charge was read and delivered to the jury, re-urged all of the above written objections to said main charge, to which objections and exceptions on the part of the defendant the court did then and there overrule said objections and exceptions, to which action of the court the defendant did then and there except and tenders this as his bill of exceptions number one and asks that the same be approved and ordered filed as a part of the record in this cause, which is accordingly done.

"The above and foregoing Bill of Exception No. 1 is hereby approved and ordered filed this 11th day of September, 1940,

with the following exceptions and qualifications concerning the last paragraph thereof;

"The first part of said paragraph, beginning with the words: 'Said above written objections and exceptions were filed,' and ending with the words: 'and again presented the same to the defendant for his objections and exceptions,' is correct, but the part of the said last paragraph following the part last quoted is incorrect, in that, after the Court amended and re-drafted the charge and presented the same to counsel for the defendant, and counsel for the defendant was given time to, and did, examine the same, he, counsel for the defendant, then stated to the court that there were no further exceptions to the charge, whereupon said charge was read to the jury."

In view of the qualification to the bill of exception, we would not be warranted in appraising the objections to the charge. We quote from Jennings v. State, 51 S. W. (2d) 341, as follows:

"It is recited in bill of exception No. 14 that appellant submitted a special instruction to the court in which the jury would have been advised to acquit appellant if they believed from the evidence that the codefendant, Wilson, actually committed the homicide while acting in his own self-defense. In qualifying the bill of exception the court stated that, after the special charge was submitted to him, he corrected his main charge, and considered that the main charge, as corrected, embodied the substance of the special instruction. It does not appear that appellant excepted to the corrected charge. Appellant did not except to the court's qualification to the bill of exception, and is bound thereby. If appellant was not satisfied with the charge after it was amended, it was incumbent upon him to file further objections thereto. Sims v. State (Texas Cr. App.) 34 S. W. (2d) 1098; Jackson v. State, 103 Texas Cr. R. 252, 280 S. W. 808; Hall v. State, 97 Texas Cr. R. 158, 260 S. W. 878."

It is shown in bill of exception No. 8 that appellant filed his second application for continuance based on the absence of "Jack, an Indian boy, residing at Wewoka, Oklahoma." It is stated in the application as follows: "That no subpoena has been issued for this witness due to the fact that he resides out of the jurisdiction of this court; no application to take the deposition of this witness has been made for the reason that his last name and street address are unknown." It is further stated in the application that appellant had an accurate description of

the witness, and that he had good reason to believe that said witness was temporarily absent from Wewoka, Oklahoma. Again, it was stated in the application that appellant expected to prove by the witness that he was near the scene of the homicide and heard Buddy Benton order appellant off of his premises, saying to him in effect that he would leave if he knew what was good for him. The witness would have testified, further, according to the averment in the application, that Benton spoke in angry tones.

We think the trial court was warranted in overruling the application for continuance. The affidavit of the witness showing the testimony he would give was not appended to the motion for new trial. The judicial discretion rested with the trial judge to determine, in passing on the motion for new trial, whether or not the absent testimony was probably true in view of all of the evidence heard during the trial. However, if the absent witness had made affidavit that if present he would have sworn to the facts stated in the application for continuance, and such affidavit had been attached to the motion for new trial, then the discretion of the trial judge to determine the probably truth of such testimony would not have operated. Tubb v. State, 5 S. W. (2d) 152. In the absence of the affidavit of the witness the trial judge was warranted in finding, in the light of the evidence adduced upon the trial, that the testimony of the absent witness was not probably true. Likewise the trial court was warranted in concluding that if the absent testimony should be before the jury in another trial, under the facts presented by the record, it is not reasonably probable that a more favorable verdict for appellant would result. See Davis v. State, 109 S. W. (2d) 756.

A careful examination of all of appellant's contentions leads us to the conclusion that reversible error is not presented.

The judgment is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

#### ON MOTION FOR REHEARING

GRAVES, Judge.

Appellant complains in his motion because of the fact that he thinks this court, in its original opinion, misread and misunderstood the trial court's qualification to his exceptions and

objections to the court's charge in that the trial court said, in substance, that after he had amended the charge in the light of appellant's objections, then the appellant had no further objections thereto. We think the decisions quoted in the original opinion mean that in the event of certain objections having been made relative to the court's charge, in the event of the trial court's amendment thereto, it is also obligatory upon the part of appellant that he again level his objections to the amended charge, otherwise such objections will be waived.

The main contention in such objections to the court's charge was based on the fact that the trial court failed to instruct the jury that the deceased was the wife of appellant at the time of the fatal difficulty, and that a decree of divorce theretofore rendered between the appellant and the deceased was void, upon the grounds that the deceased had not resided in the forum of the divorce case trial a sufficient length of time in order to entitle her to file a suit for divorce therein. An effort to have this divorce declared void in this criminal proceeding was a collateral attack thereon. We think that this judgment is but voidable at least, and can only be declared to be of no effect in a direct attack thereon. It is not a jurisdictional matter as to the time of residence of the plaintiff in the court of trial. The Supreme Court in Aucutt v. Aucutt, 62 S. W. (2d) 79, in an opinion by Justice Critz, held that:

"Under the above construction of article 4631, we hold that it is not a jurisdictional statute at all, but merely a statute prescribing the qualifications of the plaintiff in divorce cases. The plaintiff must possess the qualifications prescribed by article 4631 before he is entitled to prosecute a divorce suit in the courts of this state."

To the same effect is an opinion by Justice Monteith in the case of Prendergast v. Prendergast, 122 S. W. (2d) 710.

In other words, it is held that the matter of plaintiff's continuous residence is not a jurisdictional matter, but that the statute, Art. 4631, Vernon's Civil Statutes, merely prescribes certain qualifications of the plaintiff in order that the suit might be brought.

It is also worthy of note that appellant signed a written waiver of service of citation in the deceased's divorce case filed in Tarrant County, and entered his appearance therein. We do not think he could attack the validity of that divorce decree

entered in said cause in Tarrant County in this criminal proceeding.

We see no reason to recede from our holding in the original opinion, and this motion is therefore overruled.