GEORGE DUKE V. THE STATE.

No. 22890. Delivered June 21, 1944.
Rehearing Denied October 25, 1944.

534

The opinion states the case.

*H. R. Bishop*, of Fort Worth, for appellant.

*Ernest S. Goens*, State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is murder. The punishment assessed is death.

It appears from the record that on the night of July 8, 1943, appellant killed Metah Clay, a woman he was living with at the time although she was not married to him. On the night in question, preceding the killing, Morgan Massey, the deceased and the appellant had indulged rather freely in drinking beer and rum until they were well under the influence of intoxicating liquor. Massey was very drunk and went to sleep on a bed in the one-room house occupied by appellant and the deceased. In fact, he was so sound asleep that he heard only one of the shots fired in the room. Just immediately preceding the killing, appellant's neighbors heard loud talking and cursing, and three shots were fired at intervals from three to five minutes. They heard Metah screaming until the third or last shot was fired when the screaming ceased. After the third shot had been fired appellant left his home in a truck but later returned and notified the officers, who went immediately to the scene of the killing and found the deceased lying on a bed with blood flowing from

her head. While the officers were there, appellant told them that he had killed her. He got her by the hair, raised her head and said: "I shot her between the eyes." An examination of the body disclosed many bruises on her face and head and a bullet wound in her head between the eyes. The bullet ranged slightly upward, making its exit on top of the head and a little to the rear thereof.

Appellant did not testify but offered proof of insanity and accidental killing. The court, in his charge to the jury, instructed them fully on every phase of the law applicable to the facts in the case.

Appellant brings forward four complaints. The first relates to the court's instruction on the accidental discharge of the pistol. His objection to the charge was that it did not go far enough in that it failed to instruct the jury that although they might find or believe from the evidence that the defendant was negligent and careless in discharging the pistol, the same would not render him guilty of murder if what otherwise would be an accidental killing, and for the further reason that the court failed to instruct the jury that the defendant must have entertained at the time a specific intent to kill the deceased. The bill of exceptions is qualified by the trial court who states in his qualification thereof that after counsel for the defendant had presented his objections to the charge as aforesaid, he amended the same, and after having amended the same to meet the objections, there were no further exceptions presented thereto. In view of the court's qualification, it is our opinion that appellant was perfectly satisfied with the charge as amended. Hence he has no just ground for complaint. See Tucker v. State, 148 S. W. (2d) 1111.

Bill of Exceptions No. 2 reflects the following occurrence: While Wallace H. Cherry was being interrogated by the Assistant District Attorney, he testified that the deceased had a little baby some four, five or six months prior to the killing; that the deceased, at the time she gave birth to the baby, was at the hospital, and while there, a telephone call came to his (Cherry's) home to notify appellant to come to the telephone; that Cherry sent his son to inform the appellant that he was wanted at the telephone; that appellant came and answered the call and Cherry overheard appellant say:

"No, you can't bring them home. You named the baby after another man; just let the other man pay the hospital bill and take care of it. I am through. I might get drunk and kill both of them if they were brought home."

Appellant objected to this testimony on the ground that it was too remote, and the person talking at the other end of the line had not been identified, and that the statement of the appellant in the presence of the witness was prejudicial. The court qualified this bill, and in his qualification states that the witness Cherry testified that some four, five or six months before the killing, the baby was born; and that at the time of the conversation, appellant told Cherry that he had been talking to Vivian, a sister of the deceased. Under the facts of this case, we do not think the evidence was too remote. See Hamilton v. State, 83 Tex. Cr. R. 90; Wharton's Cr. Ev. (10th Ed.) Vol. 2, p. 1076, sec. 911.

Bill of Exceptions No. 3 shows that on two former occasions complaints had been filed against appellant charging him with lunacy; that upon the trial of each case he was found to be sane by a jury; that after a witness for the defendant had testified that he had represented him in one of the cases on a charge of lunacy, he was asked the following question:

"Isn't it a fact that Dr. Nies, the County Physician at that time, also, and while you were representing him and under your questioning, testified that he, the defendant, was of sound mind?"

He immediately objected to said question and the court sustained the objection. However, the District Attorney thereupon propounded the following question:

"Mr. McConnell, didn't you put Dr. Nies on the stand, as George's representative, at that time?"

Appellant again objected that the question was immaterial, irrelevant and prejudicial. The court overruled the objection, and the witness answered:

"I don't remember whether I put him on or whether the State put him on; I just don't recall, because the case never drew to a full conclusion."

This bill is qualified by the trial court who states in his qualification that the last statement in the bill to the effect that the defendant duly excepted to the action of the court is incorrect; that no exception was taken in connection with any of the proceedings set out in the foregoing bill of exceptions. With the bill, as thus qualified, no reversible error is reflected thereby.

Bill No. 4 discloses that after Frank Carter, a witness for the appellant, had testified that the defendant was of unsound mind, he was asked on cross-examination by the Assistant District Attorney, the following question:

"When he (the defendant) *takes* a gun, held it up, hit her over the head, would you say he did not know what he was doing?"

Appellant immediately objected to the question for the reason that it was not based on any evidence and was prejudicial. The court overruled the objection and the witness answered: "I couldn't say whether he did or not." Appellant asserts that he excepted to the ruling of the court. This bill is also qualified by the trial court who states in his qualification thereof that the answer set out in the bill was not made to the question; that just after the court overruled the defendant's objection, counsel for the State withdrew the question and asked another one as follows:

"If he took a gun and shot her in the middle of the forehead, after having shot several times in the house and having quarreled with her and fussed with her over a period of time, he would know what he was doing, wouldn't he?"

To which the witness replied: "I couldn't say whether he would or not"; that no objection was made to the question and answer as set out in the qualification. It occurs to us that in view of the court's qualification of the bill, which was accepted by the appellant, he has no just ground for complaint.

No reversible error appearing from the record, the judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

#### ON MOTION FOR REHEARING.

GRAVES, Judge.

Appellant insists that the matters mentioned in his bill of exceptions No. 2 evidence an error sufficiently damaging to his defense to require a reversal herein.

It is shown by the facts that the witness Cherry testified that about four months before the death of deceased, appellant

was called to Cherry's phone by a person named Vivian, a sister of the deceased; that Cherry heard appellant's end of the conversation, and appellant afterwards told him what was said therein. In such conversation appellant told deceased's sister Vivian not to bring the deceased and baby home, that he might get drunk and kill both the deceased and her baby, appellant at such time seeming to be doubtful that the child was his. When this testimony was offered appellant's attorney "objected to the question and the answer that it called for, for the reason that the matter was remote and that there was testimony already developed in the case about this conversation, and the birth of the baby would have been in December, some seven or eight months prior to the date of this offense, and that the person doing the talking on the other end of the line had not been identified, and because an answer to said question would be prejudicial." Whereupon the court permitted the witness to answer in the statement herein above outlined. The qualification to the bill shows that appellant at the end of the telephonic conversation detailed practically the same statement to Cherry in person, and gave him the name of the person who was talking to him over the telephone. If not too remote, we think the statement, if not in the nature of a threat, nevertheless indicated a state of mind of appellant relative to motive, as well as animus toward the deceased.

The only question herein presenting any difficulty lies in the objection as to whether such a statement was made at a time too remote from this killing. In the case of Hamilton v. State, supra, we find a statement by Mr. Wharton in his work on Criminal Evidence, Vol. 2, page 1706, sec. 911 (Tenth Edition) as follows:

"The relevancy of threats as evidence against the accused is not affected by the fact that they were near or remote to the homicide in question, as the length of time intervening is a circumstance to be considered by the jury in determining whether or not there was a connection between the threat and the homicidal act. The length of time intervening does not affect the relevancy of the testimony; but its nearness or remoteness to the act is a circumstance affecting its weight and credibility."

The Hamilton case also refers to the doctrine of an intervening reconciliation between the parties after the time of the reported statement and before the assault, and lays down the doctrine that there seems to be a conflict therein, and cites Brown v. State, 56 Tex. Cr. R. 389, in support thereof, which

case will not here avail as supporting unqualifiedly the doctrine suggested by appellant. This statement was made, according to the witnesses, from four to seven months prior to the killing; it was probably dependent on the fact of appellant becoming drunk, and then killing both the mother and the child. If there was any reconciliation attempted or effected same is not shown, save inferentially, and not even mentioned in the objection and exception thereto. It is not shown whether this was the first drunken spree since the time of the making of the threat; other testimony, however, allows the inference of the fact that appellant was rather unpleasant in his dealings when intoxicated, and that he had been drinking rather heavily just before the killing.

In the case of Upton v. State, 20 S. W. (2d) 794, we said:

"It is merely stated as a ground of objection, in appellant's bills of exception relating to the subject under discussion, that the threats involved were followed by perfect reconciliation. As stated hereinbefore, when the ruling of the trial court upon the receipt or exclusion of evidence is attacked, the correctness of the ruling will be presumed, in the absence of a showing in the bill of exception to the contrary, and the presumption in favor of the ruling is not overcome by a mere recital in the bill of the grounds assigned for opposing the ruling. Cavanar v. State, supra. (99 Texas Crim. Rep. 446, 269 S. W. 1055.)

"That the threats involved shed light upon previous malice and premeditation on the part of appellant seems clear. In view of the fact that threats are not to be excluded because of lapse of time alone, and the further fact that the bills of exception * * * * fail to show that such threats were followed by reconciliation, we are constrained to overrule the assignment."

We do not think that there is herein shown enough matters evidencing reconciliation to cause us to invoke this lightly supported and recognized controversial rule relative to a perfect reconciliation to cause us to reverse this cause, or to convince us that error is shown by the admission of the statement by appellant that: "I might get drunk and kill them both." It was shown therein that just prior to the killing some words of an angry nature passed between appellant and deceased; then one shot was fired, followed by a scream from the deceased; in a short time another shot was heard, and another scream by the deceased; then a third shot, and no further screams. The deceased was found dead soon thereafter with a bullet hole in her forehead. Upon the arrival of the officers appellant showed

them the body of deceased, and the bullet hole in her head, and said that "he had pointed the gun at her, and she had taken hold of the barrel of the gun and the gun went off. He said he didn't intend to shoot her, but that he was glad that he had." He made no explanation of the two extra shots, nor was it shown whether or not this was his first or a later drunken spree, following the statement herein complained of in this bill No. 2.

Besides the hole in the forehead, the witnesses testified to a bruise under the left eye, one in the lower part of the jaw, and two cuts in the cheek of the face, that were made with some blunt instrument, evidently not a person's fist. We confess that it would strain the credulity of an ordinary person to say that the extra shots and the bruises also came within the desired category of an accident. However, the careful trial court gave an instruction on an accidental killing, brought about possibly by appellant's statement to the officers that he had accidentally killed his wife.

Finding no error shown herein, the motion for a rehearing is overruled.