**Oscar F. COOK, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 37238.**

Court of Criminal Appeals of Texas.

Nov. 3, 1965.

Rehearing Denied Jan. 5, 1966.

William T. Moore, Bryan, Robert D. Peterson, (Court-appointed counsel), Reagan & Welch, Marlin, (Court-appointed counsel), for appellant.

Thomas B. Bartlett, Jr., Marlin, John B. Henderson, Jr., Cameron, and Leon B. Douglas, State's Atty., Austin, for the State.

McDONALD, Presiding Judge.

The offense is murder with malice aforethought; the punishment, death.

Trial was held in Falls County on a change of venue from Milam County. The indictment alleged that appellant unlawfully and voluntarily and with malice aforethought killed Mrs. Dan Crow on or about the 14th day of May, 1963.

The evidence reveals that appellant and Velma Cook, daughter of the deceased, had been married in 1959, that their marriage

was marred by two separations, and that they were finally divorced on April 30, 1963, with Mrs. Cook being awarded custody of their two small girls. During their marriage the couple lived in several Texas communities, moving from place to place frequently, staying occasionally with his relatives and at other times with hers. Appellant was not always gainfully employed.

About two weeks after the divorce, on the afternoon of May 14, 1963, appellant borrowed a car from a friend in Temple and drove over to the town of Davilla in Milam County where his ex-wife was living with her parents, Mr. and Mrs. Dan Crow. Velma Cook was employed at a beauty shop in Rogers, about eleven miles from Davilla, and when appellant found no one at their home, he called her at work, saying that he "had gotten out of jail", and asked her where his military service discharge papers were located. During the conversation he said he planned to go to Austin to the State Hospital, and that so long as he was at this mental institution, she could not obtain a divorce. It was then that she told him that their divorce had already become final.

Appellant returned to Temple, where he once again telephoned Mrs. Cook, stating that he wanted to come to Davilla and "talk to the family," to which his ex-wife objected. An argument ensued, which was terminated when she "hung up on him."

Appellant packed a small bag and borrowed a .22 caliber pistol from his cousin, saying he was going coon hunting; his cousin also gave him a dollar with which to buy a box of shells for the weapon. Appellant hitched a ride from Temple to Rogers and another from Rogers to Davilla, arriving there at about 8:30 p. m. He walked into the house and greeted everyone, asking Mrs. Cook to find his discharge papers for him. While she was in a back room doing this, appellant talked with their older daughter. Danny Crow, Mrs. Cook's brother, was in the living room watching television. Mary Lou Crow, a sister of Mrs. Cook, was studying on a bed in one of the bedrooms; the deceased, appellant's ex-mother-in-law, was in the kitchen visiting with a friend. Appellant's other child, a baby, was asleep.

Mrs. Cook took the papers to the front porch and gave them to appellant. While they were standing on the porch, in the words of Mrs. Cook, "We had a talk a while out there. He asked me to go to Texas City with him. I asked him how. The same questions I have asked a thousand times. Did he have a job? He said no, but he would get the money that night. I asked him how. He said he didn't know. I said I wouldn't go. He said, 'If it is all over between us, I want to give you this.'" Appellant then reached into his bag, took out the pistol saying, "I'm going to kill every one of you," and shot his ex-wife, the bullet going through her arm and into her body, and causing her to lose consciousness. He then went into the house and, firing again, wounded the boy, Danny, then shot the deceased in the left breast as she entered the living room. She died almost instantly, as a result of the shot. Danny remembers his mother saying, "My God, he has shot all of us." From her position in the bedroom, Mary Lou saw her mother as she was shot by appellant, who next turned the pistol on Mary Lou, seriously injuring her with a wound in the chest. The visitor, Mrs. Brisbane, after hearing appellant say that there would be no living witnesses, took the baby and ran out into the back yard. Danny, meanwhile, had taken a shotgun from behind the livingroom door and exchanged further shots with appellant, who finally pointed the pistol at his own chest and shot himself, then left the house.

Dr. Seth Lehmberg testified that appellant came to him in Taylor, Texas, at about 10:00 p. m. that evening and received treatment for the gunshot wound. He was transferred back to Milam County the following morning and placed under the medical care of Dr. S. H. Richardson at St. Edwards Hospital in Cameron. Neither physician noted anything abnormal about

his behavior during the time he was under their care.

The state adduced testimony from two psychiatrists who had examined appellant after the shootings and before his trial, and both stated that in their opinion appellant was of sound mind at the time of the commission of the offense.

The testimony for the defense was related solely to the issue of insanity. Several lay witnesses testified as to abnormal behavior of appellant, saying that at times they did not feel appellant knew right from wrong. Dr. Wylie Jones, a general practitioner, testified that it was possible that appellant might not have known right from wrong at the time of the commission of the offense.

The jury found that appellant was sane both at the time of the commission of the offense and at the time of trial, and found him guilty of the offense as charged. We find the evidence abundantly sufficient to sustain the verdict.

The able battery of attorneys appointed by the Court to represent appellant have by brief and oral argument urged fourteen contentions brought forward by formal bills of exception, along with numerous informal bills. Ten of the formal bills complain of the trial court's action in restricting the nature and scope of appellant's voir dire examination of prospective jurors.

Bill of Exception No. 1 reflects that appellant's counsel attempted to ask a prospective juror this question, "Also, Percy, it would be highly improper, you understand, for someone to inject some fact into the case not brought forth on the witness stand." Objection was taken and sustained. Counsel then completed the question for the purpose of this bill by asking, "You understand, if you were walking in the hall and someone made some statement to you or some other member of the jury as to purported facts in the case, could we count on you then to come back into the court-room and report it to the Judge?" The answer was, "I sure would." The Court stated, "I will sustain the objection to the question. And this ruling may apply to each and every venireman hereafter called, as you have made your bill." Appellant contends that, because of this ruling, he was forced to accept each juror without knowing the answer to the question set out above, to his prejudice and in violation of his rights under the constitutions and laws of the United States and Texas.

The qualifications to this bill of exception, accepted by appellant, disclose the following: Percy D. Poole, the only talesman who answered the questions propounded, did not serve on the jury; appellant exercised only eleven of his peremptory challenges; all jurors stated that they would follow the Court's instructions, and they were instructed not to discuss the case with anyone or permit anyone to discuss the case with them.

In a separate bill, appellant contends that, by its ruling on Bill No. 1, the Court gave appellant a "running objection" to all other veniremen, and that this ruling prevented him from asking each prospective juror questions pertaining to whether or not he would only consider testimony brought forth on the witness stand. The Court's qualification, again accepted by appellant, reveals that appellant's counsel stated, "Let me ask one more question he objected to prior," to which the Court replied, "no other objection can run that way. It has been ruled on this witness, and you may ask it as to the next juror." There is no showing in the record that appellant questioned any other venireman on this subject. When appellant accepted the qualifications of the trial court, he was bound by them. 5 Tex.Jur.2d 305, Sec. 185; also see Lacy v. State, Tex.Cr.App., 374 S. W.2d 244. These bills, for reasons to be discussed more fully below, reflect no error.

Other formal bills show that appellant was prevented from adducing an answer

from individual veniremen to the following questions:

In Bill of Exception No. 2: "Do you know of anything in this case that would prevent you from giving Oscar Cook the same fair, impartial trial that you would want yourself or would want for a member of your family or any friend to have?"

The Court's qualification reveals that the venireman was asked and answered a question quite similar to the one set out above.

In Bill of Exception No. 3: "Now, Billie, can we depend on you not to arrive at any hasty or compromise verdict?"

Here, also, the qualifications to the bill of exception disclose that counsel was allowed to ask, and received an answer to, a similar question.

In Bill of Exception No. 4: "Well, you would be reasonable, I am sure. You believe a jury should be reasonable in their punishment, don't you?"

The qualifications of the trial court reflect that the juror's answer to this question gave no indication that the juror would be unreasonable in any manner. No harm is shown to have resulted from the Court's refusal to allow counsel to ask the three questions set out above.

Other bills concerning voir dire examination are largely duplications of bills previously discussed and will not be considered separately, for to do so would add nothing to the jurisprudence of this state.

All of the bills discussed above are founded on appellant's theory that by the restriction of his voir dire examination of talesmen, appellant has been denied constitutional rights. We recognize that the guarantee of right to be represented by counsel carries with it the right of counsel to interrogate, within reason, members of the jury panel or special venire, so that counsel may form his own conclusion, after personal contact with the prospective juror, as to whether, in counsel's judgment, the prospective juror is acceptable to him or whether, on the other hand, counsel should exercise a peremptory challenge to keep the prospective juror from serving on the jury. Vernon's Ann.St.Const., Art. 1, Sec. 10. We do not think the foregoing bills reflect a transgression of appellant's constitutional rights for several reasons, however. The action of the trial court in controlling the interrogation of prospective jurors on voir dire is subject to review only to ascertain whether the court abused his discretion. Grizzell v. State, 164 Tex.Cr.R. 362, 298 S.W.2d 816. It occurs to us that the questions set out in Bill No. 1 were not pertinent to appellant's defense. We are inclined to the belief that in cases of this kind appellant should make a showing in the record what the answer of any venireman would have been to the question propounded. Additionally, he should show that an objectionable juror served on the jury, or that he exhausted his peremptory challenges. Lehman v. State, 172 Tex.Cr.R. 626, 354 S.W.2d 586. It is undisputed that appellant exercised only 11 of his 15 peremptory challenges. It is for these and other reasons previously stated that we find no error reflected in the bills of exception complaining of restriction of voir dire examination, and each such bill is overruled.

This holding is not in conflict with our opinion in Mathis v. State, 167 Tex.Cr.R. 627, 322 S.W.2d 629, where appellant was charged with possession of liquor for sale in a dry area. His sole defense was that he possessed the liquor for his own use, which the law authorized him to do. His counsel sought to ask the jury panel whether or not any member thereof felt it morally wrong for a person to have in his possession alcoholic beverage for his own use, and the trial court sustained an objection that the question was improper. We agree with Mathis that in such a case it is not always necessary to show what the answer would be to the question propounded, but we do not have before us a case on a parallel

with Mathis. The bill of exception in Mathis was unqualified; in the case at bar, the qualifications of the Court, which were accepted by appellant, lead us to the conclusion that no error was committed.

■ Bill of Exception No. 5. complains of the action of the trial court in overruling and denying appellant a preliminary sanity hearing upon the issue of his insanity at the time of commission of the alleged offense prior to the trial of his case on the main charge. Art. 932b, Vernon's Ann. C.C.P. and Art. 34, Vernon's Ann.P.C. can be invoked to try issues of insanity before trial of the main charge by or on behalf of a defendant only by motion or request for trial on issue of present insanity and not on just the one issue of insanity at time of commission of the crime. State v. Olsen, Tex., 360 S.W.2d 398; Castello v. State, Tex.Cr.App., 373 S.W.2d 754, concurring opinion by Judge Woodley on page 756. This contention advanced by appellant in this bill is without merit and is overruled. The trial court's qualification to this bill and the record before us reflect that appellant was permitted on the trial of this cause to introduce evidence as to his sanity and the same was submitted to the jury under proper instructions by the Court. Bill of Exception No. 6 embodies objections and exceptions taken to the court's charge. We feel that the charge of the court was full and complete and accorded appellant a fair and full submission of every issue raised by the evidence. No error is reflected by this bill.

Bill of Exception No. 13. is levelled at certain remarks made by state's counsel in his argument to the jury. It is our view that the action of the trial court in sustaining appellant's objection and instructing the jury to disregard them rendered the remarks harmless. We do not feel that the action of the trial court in refusing to grant a mistrial was error. The remarks were not of such a nature as to be inflammatory and prejudicial. We overrule this contention.

By informal bill of exception appellant complains of the action of the trial court in admitting into evidence the garment or jacket worn by the deceased at the time of the homicide. We find nothing in the record to sustain his contention that drops of blood were on the jacket or that it was inflammatory or prejudicial to his rights. This contention is overruled.

■ Appellant also urges as error, by informal bills of exception, the admission into evidence of testimony adduced by the two daughters and son of the deceased in which they related that they were also shot by appellant at the time their mother was killed. We think it elemental that this testimony was part of the res gestae, and no error is reflected by the trial court's action.

■ Appellant further contends that the trial court erred in admitting the testimony of Velma Cook, shown to be appellant's former wife. It is his contention that she lacked residential qualifications to secure the divorce from him prior to the homicide and that the divorce is a nullity; thus, she was an incompetent witness to testify against him. We find no merit in this contention. A divorce decree cannot be voided in a collateral attack upon the judgment in a criminal proceeding, only in a direct attack. Tucker v. State, 141 Tex.Cr. R. 428, 148 S.W.2d 1111.

We have carefully considered the remaining informal bills of exception and find no reversible error reflected by any of them.

The judgment is affirmed.