TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00087-CR






Martha Hernandez, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT


NO. 971260, HONORABLE MICHAEL LYNCH, JUDGE PRESIDING







 Martha Hernandez was convicted of capital murder and sentenced to life in prison
for hiring people to kill her husband. See Tex. Penal Code Ann. § 19.03(a)(3)(West 1994). She
complains about the admission of the testimony of two witnesses and about the refusal to grant a
mistrial based on the State's closing argument. We will affirm the judgment.


BACKGROUND


 The sufficiency of the evidence is not challenged here, but a quick review of the
testimony will help give context to the issues appealed, especially to the objections regarding
testimony by Tony Moreno and Ana Guevara.

 Hernandez and her husband, Robert Giral, were in the process of divorcing when
he was killed. A series of incidents illustrated the tension between the two:

 Officer David Knutson testified that he was dispatched to quell a family
disturbance at Hernandez and Giral's residence in May 1996. Hernandez
told Knutson she was upset with Giral and had been arguing with him
because he wanted a divorce. She did not allege assault, so no arrests were
made.

 

 Rudy Esquivel testified that Hernandez paid him $50 to scare Giral by
messing up Giral's truck. She was pleased with Esquivel's work on the
truck, and asked him to beat up Giral or shoot him without killing him; he
testified that she understood Giral might die from the gunshot, but did not
care. Esquivel said he had seen a gun at Johnnie Espinosa's and Carlos
Reynosa's house.

 

 Alexi Martinez, a fortuneteller and friend of Giral's family, testified he had
met with Hernandez several times to help guide her through her
unhappiness with her marital troubles. She told him Giral's truck should
be messed up, and was happy when it happened. She told Martinez she
wanted Giral back, but that Giral should be beaten if he failed to come
back. Martinez said he saw Hernandez talking to two men linked to the
shooting.

 

 Ana Guevara testified that Hernandez confronted her and Giral four days
before he was murdered. Guevara was dancing with him at Palmer
Auditorium when Hernandez pulled Guevara's hair. Hernandez later struck
at Guevara, called Giral a son-of-a-bitch, and screamed at him, "I'm going
to kill you for this."

 

 Tony Moreno, testifying under immunity, testified that Johnnie Espinosa
told him Hernandez wanted her husband killed. On December 3, 1996, the
day of the killing, Hernandez picked up Moreno, Jose Medrano, and
Reynosa. Hernandez and Reynosa decided to make the shooting appear like
a robbery gone awry, using Espinosa's gun. Moreno said Hernandez
phoned her husband to meet in Zilker Park, met him, and left her keys in
the car. Moreno stayed near the car, heard two shots ring out, and then
drove the killers away.

 

 Austin police officer Arturo Canizales responded to the emergency call
from Hernandez reporting her husband's murder. She said they met at
Zilker Park to discuss their problems as they often did. She said several
men tried to rob them, shot Giral, grabbed her hair, pushed her to the
ground, and took her car. The officers quickly began to suspect Hernandez
because cash was found on Giral's body (contrary to her claim of robbery),
Hernandez's hair was not mussed and her clothes were clean (contrary to
her claim of assault), she could not describe the assailants (contrary to her
claim she saw them), she did not describe the car and could not give a
license plate number, and she got frustrated with their questions at the scene
of the crime.


There was also uncontroverted testimony regarding enmity between Hernandez and Giral's family.


 Hernandez and others testified on her behalf. Hernandez denied participating in
her husband's death. She also denied knowing Martinez or the killers. She also made out a
money order to her husband on the day of the slaying to pay one-half the mortgage on the house. 
A security guard at Palmer Auditorium testified that there were no written reports of the alleged
confrontation at the dance. Francisco Jacobi Duran testified that Hernandez approached him at
the Mexican Consulate for assistance re-entering the United States after Giral's funeral in Mexico,
thus indicating lack of interest in flight to avoid apprehension.


DISCUSSION AND HOLDINGS


 Errors in criminal cases fall into three categories. We must reverse judgments
based on violations of the constitution not subject to harmless error review; violations of the
constitution subject to harmless error review also require reversal unless we determine beyond a
reasonable doubt that the error did not contribute to the conviction. Tex. R. App. P. 44.2(a). We
must disregard any other error, defect, irregularity, or variance that does not affect substantial
rights. Tex. R. App. P. 44.2(b). A substantial right is affected when an error has a substantial
and injurious effect or influence in determining the jury's verdict. King v. State, 953 S.W.2d 266,
271 (Tex. Crim. App. 1997).

 By two points of error, Hernandez complains about the admission of testimony from
Tony Moreno and Ana Guevara. She complains that Moreno should not have been allowed to
testify regarding Espinosa's reporting of Hernandez's statements that she wanted her husband
killed. She complains that Guevara's testimony regarding the confrontation at the dance was
inadmissible evidence of an extraneous offense. We review the trial court's decision to admit
evidence for an abuse of discretion. Montgomery v. State, 810 S.W.2d 372, 390-91 (Tex. Crim.
App. 1991) (op. on reh'g).

 Moreno's testimony fell within exclusions to the hearsay definition. The remarks
Moreno related in court were made by Espinosa, who made them while trying to recruit Moreno
to help kill Giral. That Espinosa was not present at the murder or indicted is not dispositive of
whether he was a conspirator; the critical issues are whether the statements were those of a co-conspirator made during the course and in furtherance of the conspiracy. See Tex. R. Evid.
801(e)(2)(E). Espinosa's attempts to lure Moreno into the conspiracy meet the requirements of
the exception. Hernandez's statements to Espinosa were admissions of a party. Tex. R. Evid.
801(e)(2)(A). Moreno's testimony thus was not hearsay and the trial court did not err by
admitting it. Further, any error in allowing the evidence was rendered harmless by the
unchallenged admission of Esquivel's similar testimony that Hernandez solicited the young men
to murder her husband. We overrule point one.

 Hernandez tries to paint Guevara's testimony about the altercation at the dance as
evidence of Hernandez's bad acts and inadmissible under Texas Rule of Evidence 404(b). Though
that rule excludes evidence of other crimes, wrongs, or acts introduced to prove conformity with
that character, the rule allows such evidence to show proof of motive, opportunity, or intent. See
id. Hernandez argues that any relevance is outweighed by the chance of unfair prejudice. See
Tex. R. Evid. 403. Though Guevara's testimony may recount a bad act (slapping Guevara), her
testimony certainly also is relevant to illustrate Hernandez's state of mind and the nature of her
relationship with Giral. The specific threat to kill her husband shows motive and intent. See Duke
v. State 182 S.W.2d 808 (Tex. Crim. App. 1944). Such statements are admissible in a murder
trial under Texas Code of Criminal Procedure article 38.36(a). We conclude the trial court did
not err by admitting the testimony. We overrule point three.

 Hernandez contends the trial court erred by failing to grant a mistrial based on the
prosecutor's personal attack against defendant and her counsel. The prosecutor stated, "Now, I
didn't get up and object every single time he misrepresented the evidence because then we'd never
get out of here." The court sustained Hernandez's objection, instructed the jury to disregard the
comment, but denied her request for a mistrial. We can reverse for improper prosecutorial
argument only when the argument is extreme, manifestly improper, injects new or harmful facts
into the case, or violates a mandatory statute and is too inflammatory to be cured by an instruction
to disregard. Hernandez v. State, 819 S.W.2d 806, 820 (Tex. Crim. App. 1991). We must
examine the remark in light of the full record. Though the prosecutor's comment was improper,
it was also isolated. The prompt instruction to disregard cured any error. See Shannon v. State,
942 S.W.2d 591, 597-98 (Tex. Crim. App. 1996). We overrule point two.




CONCLUSION


 Having overruled the points of error, we affirm the conviction.



 

 Bea Ann Smith, Justice

Before Justices Jones, B. A. Smith and Yeakel

Affirmed

Filed: January 28, 1999

Do not publish



ate, 953 S.W.2d 266,
271 (Tex. Crim. App. 1997).

 By two points of error, Hernandez complains about the admission of testimony from
Tony Moreno and Ana Guevara. She complains that Moreno should not have been allowed to
testify regarding Espinosa's reporting of Hernandez's statements that she wanted her husband
killed. She complains that Guevara's testimony regarding the confrontation at the dance was
inadmissible evidence of an extraneous offense. We review the trial court's decision to admit
evidence for an abuse of discretion. Montgomery v. State, 810 S.W.2d 372, 390-91 (Tex. Crim.
App. 1991) (op. on reh'g).

 Moreno's testimony fell within exclusions to the hearsay definition. The remarks
Moreno related in court were made by Espinosa, who made them while trying to recruit Moreno
to help kill Giral. That Espinosa was not present at the murder or indicted is not dispositive of
whether he was a conspirator; the critical issues are whether the statements were those of a co-conspirator made during the course and in furtherance of the conspiracy. See Tex. R. Evid.
801(e)(2)(E). Espinosa's attempts to lure Moreno into the conspiracy meet the requirements of
the exception. Hernandez's statements to Espinosa were admissions of a party. Tex. R. Evid.
801(e)(2)(A). Moreno's testimony thus was not hearsay and the trial court did not err by
admitting it. Further, any error in allowing the evidence was rendered harmless by the
unchallenged admission of Esquivel's similar testimony that Hernandez solicited the young men
to murder her husband. We overrule point one.

 Hernandez tries to paint Guevara's testimony about the altercation at the dance as
evidence of Hernandez's bad acts and inadmissible under Texas Rule of Evidence 404(b). Though
that rule excludes evidence of other crimes, wrongs, or acts introduced to prove conformity with
that character, the rule allows such evidence to show proof of motive, opportunity, or intent. See
id. Hernandez argues that any relevance is outweighed by the chance of unfair prejudice. See
Tex. R. Evid. 403. Though Guevara's testimony may recount a bad act (slapping Guevara), her