525 S.W.2d 892 (1975)
In the Matter of R. A. B., a minor, Appellant.
No. 988.
Court of Civil Appeals of Texas, Corpus Christi.
June 26, 1975.
*893 Phil Harris, Weslaco, for appellant.
Gordon Young, Asst. Dist. Atty., Juvenile Dept., Edinburg, for appellee.

*894 OPINION
BISSETT, Justice.
This is an appeal by a male juvenile, who will be 17 years of age on August 17, 1975, from an order revoking probation. The appellant will sometime be referred to as "R.A.B.", and sometimes as "the juvenile".
The State of Texas, acting by and through the District Attorney of Hidalgo County, filed a petition in the Juvenile Court of Hidalgo County on November 29, 1973, wherein it was alleged that R.A.B. "is a child whose conduct is delinquent" in that he had theretofore committed two burglaries, two thefts and was knowingly and intentionally in possession of a usable quantity of marijuana consisting of more than two ounces but less than four ounces. The petition was filed in the 93rd District Court of Hidalgo County, Texas, and the case was docketed as "Cause No. 1799-B" in that court. Judge Magus F. Smith was, and is, the regular Judge of the 93rd District Court.
A hearing was had on the petition on July 30, 1974. Following the hearing, judgment was rendered on the same day which declared that R.A.B. "has engaged in delinquent conduct within the meaning of Section 51.03 of the Texas Family Code". By a separate order, entitled "Order of Disposition", also rendered on July 30, 1974, and following a separate hearing, it was ordered that R.A.B. be placed on probation for a period of one year. Judge Smith presided at both hearings and signed both orders. R.A.B. did not appeal from either of those orders.
On December 9, 1974, the State filed a motion, entitled "Motion to Modify Disposition", wherein request was made that R.A.B. be brought before the court to determine whether the court should modify the disposition previously made. A hearing on the motion was held on March 18, 1975, before Judge Joe B. Evins, the regular judge of the 206th District Court of Hidalgo County. At the conclusion of the hearing, Judge Evins announced from the bench that R.A.B. had violated the terms and conditions of the probation. A written judgment was signed and rendered by Judge Evins on March 27, 1975, wherein it was ordered that the prior disposition order placing R.A.B. on probation be modified so as to commit him to the care, custody and control of the Texas Youth Council. A commitment order which ordered R.A.B. committed to the care, custody and control of the Texas Youth Council was also signed by Judge Evins on March 27, 1975.
R.A.B., in point of error 1, complains that the trial court did not notify him or his parent of his right to appeal from the order that declared him to be delinquent, and which was signed and rendered on July 30, 1974. The point cannot be considered by this Court in this appeal.
Point 1 relates only to the adjudication hearing and the orders which were made following that hearing. They are not before this Court in this appeal. We are concerned here only with the hearing that was held on March 18, 1975 on the State's motion to modify disposition, and the orders which were rendered on March 27, 1975, which revoked probation and committed the juvenile to the care, custody and control of the Texas Youth Council. While there are no juvenile cases on the issue presented by the point, the Texas Court of Criminal Appeals, in cases involving adults, has consistently held that where the defendant fails to appeal from the original judgment which placed him on probation, he may not attack the original conviction for the first time in an appeal from a subsequent order that revokes that probation. See Hoskins v. State, 425 S.W.2d 825 (Tex.Cr.App.1967); Brooks v. State, 459 S.W.2d 640 (Tex.Cr. App.1970); Wise v. State, 477 S.W.2d 578 (Tex.Cr.App.1972); Gossett v. State, 162 Tex.Cr.R. 52, 282 S.W.2d 59 (1955). The rule of those cases applies to the case at bar. Point 1 is overruled.
*895 Points of error 5, 6, 7, and 8 assert error in that the trial court, in both the adjudication hearing on July 30, 1974, and in the hearing on the motion to modify disposition on March 18, 1975, erred in not explaining to the juvenile and his parent: 1) the nature and possible consequences of the proceedings; 2) the allegations made against the child; 3) the privilege against self-incrimination; and 4) the juvenile's right to confrontation of witnesses. None of the points have merit.
As phrased, the points relate to alleged errors that were committed by the trial court on two different occasions and at two different hearings. The points cannot be considered insofar as the adjudication hearing on July 30, 1974, is concerned for the same reason stated in our discussion of point 1.
With respect to the hearing on the motion to modify disposition and the orders which were made and rendered pursuant to that hearing, the record reveals: R.A.B. was represented by counsel; prior to the introduction of any evidence, the comments made by Judge Evins in response to questions raised by counsel for both the State and for the juvenile, fully apprised R.A.B. and his parent of the nature and possible consequences of the proceeding, and of the allegations made against the child; R.A.B. did not testify at the hearings, consequently there is no basis for the complaints concerning "self-incrimination"; counsel for R.A.B. cross-examined the State's witnesses in great detail, and the juvenile was accorded the right of confrontation of witnesses. Points 5, 6, 7, and 8 are overruled.
The juvenile, in point 2, contends that neither Judge Evins nor the 206th District Court of Hidalgo County have jurisdiction over him or Cause No. 1799-B, and that the order which, in effect, revoked his probation, rendered on March 27, 1975, is void. We do not agree.
Under the Texas Family Code Ann., V.T.C.A. (1974), all procedures concerning juveniles are controlled by the provisions of Title 3. Section 51.04 thereof, entitled "Jurisdiction", provides, in part:
"(a) The juvenile court has exclusive original jurisdiction over proceedings under this title.
(b) In a county having a juvenile board, the board shall designate one or more district, criminal district, domestic relations, juvenile, or county courts or county courts at law as the juvenile court . .
* * * * * *
(e) A designation made under Subsection (b) ... of this section may be changed from time to time by the authorized boards or judges for the convenience of the people and the welfare of children. However, there must be at all times a juvenile court designated for each county. It is the intent of the legislature that ... changes in the designation of juvenile courts be made only when the best interest of the public requires it."
* * * * * *
It is, therefore, plain that statutory authority existed for the designation of all the district courts of Hidalgo County, Texas, as "the juvenile court". Nothing is presented which indicates that the 206th District Court could not have been so designated.
The juvenile, in his brief, makes the unqualified statements: that only the 93rd District Court has been designated as the juvenile court of Hidalgo County; that Judge Smith is the juvenile judge for that court; and that the 206th District Court and Judge Evins "have not been designated as a juvenile court'. The statements have no support in the record. The burden was upon the juvenile to show that Judge Evins and the 206th District Court did not have jurisdiction in the premises. He did not meet that burden. Moreover, the judgment which modified the original disposition *896 shows on its face that it was made and entered in a cause then pending in "THE JUVENILE COURT OF HIDALGO COUNTY", and that it was signed and entered by Judge Evins as "PRESIDING JUDGE". Furthermore, the order of commitment affirmatively shows that it was signed by Judge Evins, Judge of the 206th District Court, "Sitting as a Juvenile Court in said County".
The juvenile also makes the statement in his brief that "the case was not transferred to any other court or judge by Judge Smith". The record is silent in that respect. All that is shown is that Judge Smith conducted the original hearing and Judge Evins conducted the hearing on the motion for modification of disposition of the juvenile. The Court of Criminal Appeals, in Wise v. State, supra, held where the record showed that all judges of the county could hear all cases, the judge of the 30th District Court, who conducted the entire hearing on the motion to revoke probation, had authority to revoke probation, notwithstanding the fact that the Judge of the 89th District Court presided at the original trial. Also, in Chavez v. State, 462 S.W.2d 283 (Tex.Cr. App.1971), it was held that two judges could conduct parts of one hearing on motion to revoke probation and that either judge could make the ruling.
Rule 330(e), (f), (g) and (h), Texas Rules of Civil Procedure, provides in counties where there are two or more district courts, for the exchange and transfer of authority from one court to another, wherein the judges have broad powers to try any case assigned to another court without having the case transferred, or to transfer cases to other courts. In particular, subsection (g) thereof provides that one judge can hear only part of the case and some other judge can hear the remainder of the case and render judgment.
No reason is shown why Judge Evins was not legally empowered to conduct the hearing and render the judgment that is attacked. It has not been shown that the 206th District Court is not a juvenile court of Hidalgo County. It is not shown that the case was not transferred to Judge Evins and the 206th District Court. Under the record, we must presume that Judge Evins had jurisdiction to hear and determine the case. Point 2 is overruled.
Points of error 3 and 4 assert that the trial court erred in overruling the juvenile's motion to quash the motion to modify disposition, and that the trial court erred in modifying the disposition of the juvenile based on a finding that he engaged in delinquent conduct without finding that he violated a reasonable and lawful order of the court.
The State, in its motion to modify disposition, alleged:
"... said R.A.B. was placed upon probation for a period of one year contingent upon the proper and lawful comportment of said R.A.B. and upon certain other reasonable and lawful terms and conditions which had to be complied with by the said R.A.B.
* * * * * *
That on or about November 17, 1974, he violated a penal law, ... knowingly possess a usable quantity of marijuana of more than four ounces, against the peace and dignity of the State."
Counsel for the juvenile at the hearing on the State's motion verbally moved that the motion be quashed on the ground that "it doesn't say that he violated a term of his probation". The motion was denied. No special exceptions were filed with respect to the State's motion. In addition to the ground urged at the hearing, the juvenile now contends that the State's motion is vague, ambiguous, and does not satisfy the requirements of due process in that it does not adequately inform him of the charges made against him.
R.A.B., at the adjudication hearing, among other stipulations made by him with *897 the approval and consent of his attorney, stipulated that on or about March 24, 1974, he knowingly and intentionally possessed a usable amount of marijuana consisting of less than four ounces but more than two ounces. It was because of the commission of burglaries, theft, and the possession of marijuana that he was adjudged a delinquent and was placed on probation.
R.A.B. further argues that the language "contingent upon the proper and lawful comportment of said child" which appears in the order that placed him on probation is so vague as to have no legal meaning, and that he did not know what conduct was or was not acceptable under the conditions of probation.
The word "lawful", while not particularly definite, refers to matters of substance, rather than to matters of form. It has been defined "as meaning according to law; according to, or provided by, law; that which in its substance is sanctioned or justified by the law". 52A C.J.S. Lawful, pp. 745-746. The word "comportment' is just another word for "behavior". Both words "lawful" and "comportment' are words of common usage and easily understood. While it is true that the language used in the adjudication order is colloquial rather than legal, we cannot agree with the juvenile that he did not know that the commission of a felony was not prohibited under the terms of his probation. Under all the facts and circumstances here presented, it is inconceivable that R.A.B. would not know that possession of more than four ounces of marijuana would not constitute a violation of the conditions of his probation, especially when his original adjudication as a delinquent resulted, in part, from his possession of less than four ounces of marijuana.
Tex.Family Code Ann. § 54.05(f) (1974) states that disposition of a juvenile may be modified "if the court after a hearing to modify disposition finds beyond a reasonable doubt that the child violated a reasonable and lawful order of the court." The judgment which is the subject of this appeal recites:
"that the court ... finds beyond a reasonable doubt that within the period of probation the said child violated the reasonable and lawful terms and conditions in the following particulars: that on or about the 17th day of November, A.D. 1974, during said period of probation, R.A.B., in the County of Hidalgo and State of Texas, violated a penal law of the State of Texas punishable by imprisonment, namely Section 4.05 of the Texas Controlled Substance Act, in that he did then and there knowingly possess a usable quantity of marijuana of more than four ounces, against the peace and dignity of the State."
Juvenile matters are civil in nature and are governed, so far as practicable, by the Rules of Civil Procedure. Brenan v. Court of Civil Appeals, Fourteenth District, 444 S.W.2d 290 (Tex.Sup.1968). The controlling issues with respect to points 3 and 4 are whether the record shows a substantial compliance with the pertinent provisions of the Texas Family Code Ann. (1974), and whether the trial court, in revoking the probation, abused its discretion in finding a violation of a condition of the probation. In re Cockrell, 493 S.W.2d 620 (Tex.Civ. App.Amarillo 1973, no writ).
In an adult probation revocation case, Dempsey v. State, 496 S.W.2d 49 (Tex.Cr. App.1973), the Court said:
"There are no statutory provisions governing when a motion directed to the insufficiency of the pleading to revoke probation must be filed, or what form such motion shall take, nor is there statutory guidance in determining the sufficiency of the pleading[s]. Thus, our determination must be based upon whether the trial court abused its discretion in overruling appellant's motion."
The disposition order rendered by Judge Evins sets out that he finds that *898 R.A.B. engaged in conduct after the date he was placed on probation which violated the terms of his probation in that he violated a penal law of this State. We hold that there was substantial compliance with the applicable provisions of the Texas Family Code Ann. (1974), and that there was no abuse of discretion in overruling the juvenile's motion to quash the State's motion to modify disposition, or in revoking the juvenile's probation. Points 3 and 4 are overruled.
R.A.B., prior to the hearing on the State's motion to modify the disposition made of him by the orer of July 30, 1974, filed a written motion to suppress the introduction into evidence of the marijuana which was discovered in his car on November 17, 1974, on the ground that such was obtained as a result of an illegal search and seizure. He also filed a written motion that the State be required to reveal the name of the informer in order for him to examine the informer and thereby determine whether or not there was probable cause for his arrest and search. Both motions were denied. The court's rulings thereon form the basis for points of error 10 and 11.
It is undisputed that the arresting officer did not have either a warrant for the arrest of R.A.B. or a search warrant for either his person or the car being driven by him at the time the marijuana was discovered in his possession. The contention is made that there was no probable cause for the warrantless arrest of the juvenile, and since no search warrant was obtained prior to the arrest, that the fruits of the search incident to the arrest were inadmissible in evidence at the hearing on March 18, 1975.
R. L. Park, Chief of Police, Mercedes, Texas, testified that on November 17, 1974, at about 3:00 p. m., he received information from an informant, who had given him reliable information on two or three prior occasions that had led to narcotics arrests, that R.A.B. would be selling marijuana to a third person in the parking area of the laundromat of a trailer park located in the vicinity of Chapman Drive and 5th Street, Mercedes, Texas, and that the sale would be made at about 8:00 p. m. on that day. He further testified that he knew R.A.B. by sight, and that he knew "the vehicle he normally drove". At approximately 6:30 p. m., on November 17, 1974, Park and another officer set up a surveillance of the above described location and area. Between the hours of 8:00 and 9:00 p. m., Park saw R.A.B.'s vehicle drive by the area "two or three times"; after his "second pass", another car pulled into the parking lot and then R.A.B. drove into the lot, stopped his car in front of the laundromat in the parking lot. He stopped his car "nose to nose to the other car". Park said he then approached the cars, identified himself as a police officer, placed all parties under arrest, searched them, found marijuana paraphernalia on the person of R.A.B., searched the car then being driven by R.A.B., and discovered a bag in the car that contained a substance which he believed to be marijuana. The bag and the items found on the juvenile's person were seized by him.
Much has been written of late on the topics of "probable cause", "warrantless arrests", and "searches and seizures". No reason exists why we should lengthen this opinion by a review of the many cases on the subjects. The same fact situation which is present in this case has been repeatedly passed on by both Federal Courts and the Texas Court of Criminal Appeals. See Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); United States v. Acosta, 411 F.2d 627 (5th Cir. 1969); Coyne v. State, 485 S.W.2d 917 (Tex.Cr.App.1972); Almendarez v. State, 460 S.W.2d 921 (Tex. Cr.App.1970); Boatright v. State, 472 S.W.2d 765 (Tex.Cr.App.1971); Garcia v. State, 459 S.W.2d 839 (Tex.Cr.App.1970); Rangel v. State, 444 S.W.2d 924 (Tex.Cr. App.1969). In the case at bar, the arresting officer knew R.A.B. on sight and was familiar with the car that he usually drove; the *899 information given to him came from a source that had proved to be reliable and trustworthy on prior occasions; and the events unfolded exactly as the informant told him would be the case. Under the circumstances, there were reasonable grounds for Park to believe that R.A.B. would be in possession of marijuana at the appointed time and place. There was probable cause for the arrest of R.A.B., and the search of his person and car was legal. The evidence discovered at the scene was legally admissible. Point 10 is overruled.
The record further reveals that the informant was not paid for informing, did not have a criminal record, and was not present at the scene of the arrest and search. Chief Park, the arresting officer, had known the informant for at least nine months prior to November 17, 1974; this informant told Park that R.A.B. would be selling marijuana at a specific time and place. This case falls within the rule announced in Gaston v. State, 440 S.W.2d 297 (Tex.Cr.App.1969). The reliability and credibility of the informant was established by Park's testimony. Probable cause was established when the information given Park by the informant was corroborated at the scene by Park's own observations.
There was no requirement that Park, the arresting officer, state how the informant obtained the information. United States v. Drew, 436 F.2d 529 (5th Cir. 1971). Nor is there any requirement that the informant in this case be identified. Enriquez v. State, 501 S.W.2d 117 (Tex.Cr. App.1973). Point 11 is overruled.
Point of error 9 urges that the trial court erred in admitting into evidence, over objection, the bag and the marijuana contained therein (State's Exhibit 8), which was found in the juvenile's car, because there was a break in the chain of custody of the marijuana. The record does not support the point.
Chief Park testified as follows: that he saw the bag, which he identified as being the same bag which was designated State's Exhibit 8, on the floor of the juvenile's car at the scene of the arrest; that he took possession of it, opened it, and believed that it contained marijuana; that he wrote his name on the bag and the date "11-17-74"; that he left the scene, went to police headquarters, where he deposited the bag in a safe, where it remained locked-up; that he removed the bag from the safe about ten days later and observed that it was in the same condition as when he put it in the safe; and that he then took the bag to the Department of Public Safety's lab in McAllen, where he handed it to Don Taylor, a chemist, who placed his own markings on it. At the hearing on March 18, 1975, he identified State's Exhibit 8 as being the same bag that he had given to Don Taylor under the circumstances already noted.
Don Taylor testified as follows: that he was a chemist-toxicologist with the D.P.S. in McAllen; that he conducted a chemical analysis on the contents of the bag (State's Exhibit 8) which was delivered to him by Chief Park; that he determined that the bag contained approximately 6.95 ounces of marijuana; that after he had completed his analysis of the contents of the bag, he put the evidence (State's Exhibits 4, 5, 6, 7 and 8) in a box, sealed the same, and placed it "in my evidence storage room'; that the contents of the sealed box remained in his care, custody and control from the time they were delivered to him by Chief Park until March 18, 1975, the date of hearing on the State's motion to modify disposition, when the box was delivered by him to the District Attorney.
There was no showing that the contents of the box had been tampered with by anyone. The record reflects a perfect chain of custody from Chief Park to Don Taylor to the District Attorney. There was no error in admitting the contents of the box *900 into evidence. Mitchell v. State, 488 S.W.2d 786 (Tex.Cr.App.1973). Point 9 is overruled.
The judgment of the trial court is affirmed.