## Will Adams v. The State.

### No. 3708.   Decided January 30, 1907.

1.—Assault With Intent to Rape—Jury and Jury Law—List of Jurors—Statutes Construed.

Where upon trial for assault with intent to rape, the defendant was required to select his jury from a list that had been drawn and prepared by the clerk prior to his announcement of ready in his absence, to which proceeding he objected, which the court overruled, and to which ruling the defendant reserved a bill of exceptions. Held, that under articles 682 and 683, Code of Criminal Procedure, the defendant had a right to be present when his jury was drawn, and to see that the list was drawn by the proper person and in accordance with law.

2.—Same—Evidence—Declaration of Third Parties—Res Gestae—Bill of Exceptions.

Upon a trial for assault with intent to rape, it was permissible to introduce in evidence as res gestæ the statement of the prosecutrix, within a minute or two after the alleged assault upon her, to the officer that the defendant had tried to assault her and had struck her; however, the bill did not disclose the answer of the witness sufficiently.

Appeal from the Criminal District Court of Dallas. Tried below before the Hon. E. B. Muse.

Appeal from a conviction of assault with intent to rape; penalty, two years imprisonment in the penitentiary.

The prosecutrix testified that she was stopping in a room on the fourth floor of a Dallas hotel; that during the night she had occasion to ring for ice water; that the bell boy (the defendant) came up with the water and turned out the light in her room; that prosecutrix jumped up in her night gown and turned it on again, telling the defendant to leave on the light; that defendant then locked the door and put the key in his pocket; that the prosecutrix started for the bell but defendant grabbed her hands and she began to scream, struggling to get away from him; that defendant picked her up and slammed her down on the floor, saying, "you look good to me, I am going to have some." Defendant had his pants unbuttoned and privates out, and tried to tear prosecutrix' clothes; that prosecutrix finally got her hand to the bell button and pressed the same, and in a few moments the night watchman came up, and she told him, and shortly afterwards defendant was arrested. When she rang for the watchman defendant opened the door and went out. The defendant went on the stand and denied that he made any effort to rape, but that he was trying to get 50 cents from her which she owed him. The State also proved by the night watchman and hotel clerk that the prosecutrix had

marks of violence upon her person and was bleeding some when they got to her room, etc., and that the defendant was seen near the prosecutrix' room and shortly after left the hotel.

No brief on file for appellant.

*F. J. McCord,* Assistant Attorney General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of an assault with intent to rape, and his punishment assessed at two years confinement in the penitentiary and prosecutes this appeal.

Appellant questions the action of the court in regard to drawing list of jurors to try this case. The bill, as presented, shows substantially as follows: that appellant was required to select his jury from a list that had been drawn and prepared by the clerk prior to his announcement of ready. The court, in explaining this bill, says that he had the proper heading put on the list which had already been made out under instructions from the court. We understand from this that before the case was called, the judge had a list drawn from the box, evidently to try any case that might be called up. We do not regard this as the proper practice. The statute requires that when a case is called for trial, that the clerk shall then draw a list of jurors from the box, etc. We understand that each jury list is to be drawn in the particular case. Appellant should be present at the time of such drawing. See arts. Code Crim. Proc., 682 and 683, and McMahon v. State, 17 Texas Crim. App., 321. In that case it was held that the objection came too late after the verdict, and in the motion for a new trial. It is said there, "An acceptance of the jury by the accused is a waiver of the right to question its organization on motion for new trial or in arrest of judgment." However, it is strongly intimated that the practice of drawing a jury in a case before the announcement of ready in that case, is an innovation upon the statute, and that many good reasons suggest themselves in behalf of a strict observance of the statutory method. In this case, a bill of exceptions, in connection with the court's explanation, shows that the objection was urged at the proper time, and the bill of exceptions taken to the action of the court in overruling appellant's objection, and in forcing a jury list upon him which had not been drawn in that case; but under direction of the court; had been drawn in the absence of appellant, in any case that might come up for trial. Appellant has a right to be present when his jury is drawn, and the right to see that the list is drawn by the proper person and in accordance with law, and the court should, when this objection was made, have set aside the list already drawn, and then ordered the clerk to draw a new list for the trial of the case. It is no answer to this requirement of the statute, to urge that no injury is shown; that appellant, by the means adopted, was furnished with a fair and impartial jury. We might go further and say, according to this reasoning the court might adopt any method

outside of the statute which might secure a fair and impartial jury. The law has ordained a tribunal for the trial of criminal cases, and has provided the method of selecting a jury, and there is no authority to resort to any other method, and it is not incumbent on appellant to show that he suffered injury by the failure of the court to follow the statutory method.

Appellant excepted to the action of the court in allowing, as he says prosecutrix to detail what she said to the witness, Charles Benson, relative to the assault made on her, and which statement went into all the matter at length, and was not confined to the question asked, which was, to wit: "Q. The night watchman came up there and you had a talk with him did you not?" This bill does not disclose the answer made by the witness. If we recur to the bill on the same subject in the statement of facts, it does not appear that the witness went into details as to what was told him by prosecutrix when he went into her room. We take it that this was a part of the res gestæ. Appellant had just left the room of prosecutrix; the witness met him as he left, and this was but a very short time, a minute or two, after the alleged assault, and the prosecutrix was then suffering and crying. Even if the bill as taken in the transcript, could be considered a correct bill of exceptions, we think the testimony was admissible.

Bill of exceptions, which is No. 3 in the record, cannot be considered from the fact that no details are shown as to what the prosecutrix told Charles Benson; it is merely said that the witness went into the' matter at length, etc.

Bill of exceptions No. 4, shows that appellant objected to part of the evidence of Charles Benson where he stated "When I got to No. 306 Mrs. Thomas opened the door and said a boy had been up there and tried to assault her and had struck her." This was objected to because it was going into details of the transaction. What we have said with reference to the preceding bill is applicable to this. It was a part of the res gestæ. However, this bill merely shows that the witness was permitted to state that the prosecutrix made complaint without going into the particulars, that is, the prosecutrix merely told the witness, according to his statement, that a boy had been up there and tried to assault her and had struck her. For the error discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*