SALVADOR DE JOYAS v. THE STATE.

No. 21583.   Delivered April 23, 1941.

The opinion states the case. ·

*E. H. Hernandez,* of Corpus Christi, and *Miller & Dawson,* of Sinton, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State, on submission.

HAWKINS, Presiding Judge.

Appellant was charged with having possession of a still, mash, material, equipment and supplies for the manufacture of intoxicating liquor without having a licence or permit therefor. Upon conviction his punishment was assessed at a fine of $100.00.

On December 31, 1940, officers, with the consent of E. Flores, searched a house on Flores' place and found four barrels of mash and other equipment with which ·whisky could be made.

Appellant was not present at the time but lived in Corpus Christi. The land upon which Flores lived was owned by Mr. Richey. Flores was a tenant on the place and had been for many years. Officers arrested E. Flores and his son, Domingo Flores, a young man twenty years of age, who lived with his father.

Without setting out the evidence of the State's witnesses, the conclusion therefrom may be stated as follows: Appellant had come to the farm some two or three months before the raid for the purpose of picking cotton and had been quartered by E. Flores in a house about 100 feet from the residence occupied by the said Flores and his family. Appellant assembled the manufacturing equipment with the aid of one Cuate and one Antonio, manufactured whisky in the house occupied by appellant and continued such manufacture up to about a month before the raid. E. Flores knew what was going on, and about a month before the officers made the search in question, he declined to permit the further use of the house for the purpose of making whisky and ordered appellant and his two companions off the place. E. Flores testified that appellant "took all the barrels out and scattered them over the place." He further testified that "the last time this mash and everything was put up, it was put there by Domingo and Cuate and by no one else. That is the equipment and mash they found there. Cuate and Domingo, my son, put the equipment back in there." This witness also swore that appellant owned the still, mash, coils, kerosene cans and the stove that were in the house but said that appellant had not been to the place just before or just after the officers came.

For some reason the trial court confined the jury to the exact day alleged in the State's pleading, which was the day of the raid. He charged the jury as follows:

"You are further instructed that unless you believe from the evidence beyond a reasonable. doubt, that the defendant, Salvador De Joyas, at the time and the place where the equipment alleged in the information were found, if any were found, he the said Salvador De Joyas, was in possession of such equipment, you will acquit the defendant and say by your verdict, 'Not Guilty.' "

He also incorporated in his instruction the following definition:

"The word 'possession,' as used in this charge, means having personal charge of and exercising the right of control and ownership of the alleged still, mash, material, equipment and sup-

plies for the manufacture of liquor capable of producing intoxication."

Bills of Exception Nos. 1, 2, 3, and 4 present the same question and will be disposed of together. It is appellant's contention that under the peculiar facts of the present case, the definition of "possession," as given by the court, was likely to confuse the jury because of the use of the term "ownership" in the same and urges that it not only was calculated to confuse them but did in fact do so, as reflected by Bill of Exception No. 1. Said bill shows that while considering their verdict, the jury came into court and in writing propounded the following question: "The jury wishes to know whether or not possession means ownership?" Said bill further reflects that when the question was asked, appellant again requested the trial court to give his special charge and answer the jury's question in order that they might not improperly understand the meaning of the term "possession" as applied to the present case. The court declined to answer the question or to define or qualify the term "possession" other than as already embraced in his charge. We think that in the respect mentioned the trial judge fell into error. The evidence shows that appellant did in fact own the equipment mentioned, at least there is nothing to show that he had passed title to anyone else, but when caused to leave the place some month or more before the raid, he had scattered the equipment over the place and apparently abandoned the property. It was re-assembled and again put into use, not by appellant but by Domingo and Cuate. They were the ones exercising actual care, control and management of the equipment at the time of the raid.

In Newton v. State, 94 Texas Cr. R. 288, 250 S. W. 1036, a definition of "possession" substantially as given in the present case was held correct under the facts there presented; and such a charge was also approved in Terry v. State, 101 Texas Cr. R. 267, 275 S. W. 837. But in those cases there appeared to be no divergence in the ownership and possession of the property involved.

In Davis v. State, 102 Texas Cr. R. 546, 278 S. W. 848, it is made clear that an accused charged with the possession of equipment, etc., need not be the owner of same if he is in actual personal control, care and management of it. For cases approving the charge requested by appellant, see Wilkes v. State, 105 Texas Cr. R. 432, 289 S. W. 44; Schenk v. State, 106

Texas Cr. R. 564, 293 S. W. 1101; Watson v. State, 114 Texas Cr. R. 117, 24 S. W. (2d) 830.

In Seale v. State, 118 Texas Cr. R. 324, 39 S. W. (2d) 58, accused was charged with the possession of intoxicating liquor for the purpose of sale. Certain language found in the opinion on motion for rehearing seems applicable here and is quoted as follows:

"Under the facts of this case, if appellant had possession of the whisky in question at all, he had the actual care, control, and management in person of same at the filling station where it was found. We think the definition of possession as given in the charge of the court was entirely sufficient and applicable to the facts. The facts in any given case must affect and control the charge. If appellant had been absent, and the facts showed him not to have exercised any personal relation to the intoxicating liquor, there might be some room for the complaint."

The cases referred to make it clear that a person might be exercising actual care, control and management of a still, equipment, etc., and not own it at all. On the other hand, a person might own it and yet not at the particular time be exercising actual care, control and management over it. We think under the facts here present, issues were raised which called for a modification of the court's definition of "possession" although under some facts it might not be improper.

Under the peculiar facts here present, there would have been no impropriety in giving the special charge, the refusal of which is complained of in Bill of Exception No. 5. Said charge reads as follows:

"You are further instructed that, if, you believe or have a reasonable doubt thereof, that E. Flores or Domingo Flores had exclusive control, care and management of the still, mash, material, equipment and supplies alleged in the information herein, you will acquit the defendant and say by your verdict: 'Not Guilty.'"

The requested charge would seem pertinent especially in view of the definition of "possession" employed by the court in his main charge.

By Bill of Exception No. 6 appellant complains because the court did not give a special charge telling the jury that the information was no evidence of his guilt. In the absence of a showing that the State had used or attempted to use the information for some evidential purpose, we think the re-

quested charge was not called for; at least the refusal of same presents no reversible error.

Bill of Exception No. 7 reflects the following occurrence: When the case was called for trial and after both the State and defendant had announced ready for trial, the clerk handed to appellant's counsel a jury list which had been prepared without the names of the jury being drawn and listed in the order drawn. Counsel for appellant objected to the list so presented and requested that the jury be drawn as provided in Articles 627 and 628, C. C. P. The request was denied and proper exception was reserved. Said Article 627 reads as follows:

"When the parties have announced ready for trial in a case not capital, the clerk shall write the name of each regular juror entered of record for that week on separate slips of paper, as near the same size and appearance as may be, and shall place the slips in a box and mix them well."

Article 628, supra, provides:

"The clerk shall draw from the box, in the presence of the court, the names of twenty-four jurors, if in the district court, or so many as there may be, if there be a less number in the box; and the names of twelve jurors, if in the county court, or so many as there may be, if there be a less number in the box, and write the names as drawn upon two slips of paper and deliver one slip to the State's counsel and the other to the defendant or his attorney."

In the case of Adams v. State, 50 Texas Cr. R. 586, 99 S. W. 1015, it was held that the procedure pointed out in the two Articles of the Code of Criminal Procedure should have been followed, if timely requested. The Adams case has been followed in Bell v. State, 92 Texas Cr. R. 342, 243 S. W. 1095; and in Moore v. State, 132 Texas Cr. R. 403, 105 S. W. (2d) 250. The three cases mentioned were felony convictions, but said Article 628, makes it clear that the Legislature intended that the same procedure be followed in cases pending both in the county court and in the district court, if less than capital in the latter court.

For the errors pointed out, the judgment is reversed and the cause remanded.