Gonzalo **GONZALEZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

Raymond **GONZALEZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

Nos. 43717, 43718.

Court of Criminal Appeals of Texas.

May 19, 1971.

Rehearings Denied June 23, 1971.

Robert B. Billings, F. T. Gauen, Dallas, for appellant.

Henry Wade, Dist. Atty., John B. Tolle, Harry J. Schulz, Jr., W. T. Westmoreland, Jr. and Edgar A. Mason, Asst. Dist. Attys., Dallas, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

DOUGLAS, Judge.

The appeals are from convictions for murder without malice after a joint trial. The punishment of each appellant was assessed by the jury at five years.

The evidence viewed in the light most favorable to the verdicts shows that on the 26th day of October, 1968, Felix Gomez, the deceased, and David Gomez were working on a car in the backyard at Felix's home in Dallas. In the afternoon Oscar Flores who had just been discharged from the military service came by for a visit. Some of the neighbors gathered in front of the house to see Oscar.

Gonzalo and Raymond Gonzalez, the appellants, drove up in Raymond's car, got out and greeted Oscar. After they were there about ten minutes an argument developed. Felix told David to go into the house and then followed him inside. Felix then told David to get the shotgun and later told him to stay in the house with the gun because it appeared there was going to be trouble.

David testified that Raymond drove away, and later David looked outside when Felix left the house and saw that Raymond had returned in his car and that Gonzalo was standing in the street with a shotgun. Felix proceeded toward the street and as he reached the ditch in front of his house and started to pick up a beer, Gonzalo shot Felix in the left side in the armpit. Felix fell into the ditch and Gonzalo shot at him four more times. While this shooting was going on, David ran outside and shot at Gonzalo one time but missed. Then David's gun jammed.

Raymond then shot David in the hand with a .38 caliber pistol causing him to drop the gun. As David ran, Raymond shot at him two more times. In the meantime, Nellie Gomez, the wife of Felix, came outside their house and screamed to Gonzalo to stop shooting at her husband. Raymond then pointed the pistol at Nellie and told her to go back in the house or he would shoot her. She followed his instructions. Raymond then ran to where David had dropped his gun, picked it up and took it with him. He testified that he did so because he wanted it for evidence in the case.

After emptying his gun at Felix, Gonzalo ran down the block between two houses. Raymond came by, picked him up and they drove away.

Officer Head, who arrived at the scene shortly after the shooting, testified that he found five spent 12-gauge shotgun shells, all within a four feet radius of each other. He testified that he found no weapons around the deceased (Felix) during the search of the scene.

David and Nellie both testified that the deceased was unarmed.

The cause of death was shown to have been by shotgun pellets destroying both the lungs and the heart of the deceased.

The testimony of Gonzalo and Raymond was substantially the same as that of the State up to the point where the argument started. Their testimony was to the effect that Felix was trying to pick fights with everyone present, and Gonzalo did not want to fight. Gonzalo testified that he started walking away and Felix pulled a pistol and started shooting at him; that at this time Raymond drove up and Gonzalo ran, got the shotgun from the car and started shooting at Felix; and that during this time Gonzalo was running backwards to get away.

The jury chose not to believe the testimony of the appellants.

The appellants filed a brief containing some 79 grounds of error. No summation of the facts appears in the brief. No authority has been cited and no argument in support of any ground has been submitted. Many of the grounds of error are one sentence long and are of the conclusory-type with references to certain page numbers of the record.

Article 40.09, Section 9, Vernon's Ann. C.C.P., provides, in part:

"This brief shall set forth separately each ground of error of which defendant desires to complain on appeal and may set forth such arguments as he deems appropriate. Each ground of error shall briefly refer to that part of the ruling of the trial court, charge given to the jury, or charge refused, admission or rejection of evidence or other proceedings which are designated to be complained of in such way as that the point of objection can be clearly identified and understood by the court."

In Alexander v. State, 458 S.W.2d 656, this Court stated:

"Neither the trial court nor this court, with its crushing case load, should be expected to examine and re-examine an appellate record trying to determine and speculate on the true meaning of appellant's contentions advanced without argument, reasoning or authorities."

■ The appellants included several grounds of error complaining that the evidence is insufficient to support the convictions. The testimony shows that the appellants were acting as principals and is sufficient to support the convictions.

■ Appellants complain that the court erred in overruling their motions to quash the indictments and their motions to quash the petit jury on the grounds that no one of the Latin-American race was on the grand jury or petit jury.

Neither of the motions was sworn to nor supported by an affidavit by the appellants or anyone else. The motions, therefore, do not comply with Article 35.07, V.A.C.C.P.

Further, no evidence appears in the record to support either motion. Nothing has been presented for review.

■ The appellants complain in their briefs and argument before this Court that the court erred in not granting the motions to shuffle the entire central jury panel. The motions to shuffle, omitting the formal parts, read:

"Comes now the defendant * * * in the above entitled and numbered cause and moves the Court, in accordance with C.C.P. 35.11 to cause the names of all the members of the general panel drawn or assigned as jurors in this case to be placed in a receptacle and well-shaken, and have the clerk draw therefrom the names of a sufficient number of jurors

from which a jury may be selected to try such case, and order said clerk to be written, in the order drawn, on the jury list from which the jury is to be selected to try this case, and to write the names as drawn upon two slips of paper and deliver one slip to the State's counsel and the other to the defendant's attorney."

The trial judge noted that he was unable to get all of the central jury panel cards because other courts had already drawn from the central panel, but the panel of forty-five for which he had cards were shuffled.

The court granted all of the appellants' requests and fully complied with Article 35.11, V.A.C.C.P., in shuffling the cards containing the names of those assigned as jurors in such case.

To require a shuffling of all cards of those in the entire central jury panel (perhaps a thousand prospective jurors) in each case would be an impossibility for each trial court in a large city. The Legislature did not provide for such a procedure.

No error has been shown.

■ The appellants also complain that the court erred in giving separate charges to the jury and refusing to combine the charges.

The appellants were charged in separate indictments but were tried jointly. The trial court adopted the better and preferred practice of submitting separate charges to the jury. In joint trials, defenses are often different as they were in this trial. Separate charges help prevent confusion and better enable a jury to reach proper verdicts. Mayzone v. State, 88 Tex.Cr.R. 98, 225 S.W. 55, involved a joint trial and only one charge was submitted to the jury. This Court held that separate charges should have been given.[1]

---

1. These separate appeals arose out of a joint trial. Two identical transcriptions of the court reporter's notes, consisting of 718 pages, were filed with the Clerk of

No error has been shown.

The instructions of the court adequately covered the issues raised by the evidence and protected the rights of the appellants. A discussion of the contentions about the court's instructions would add nothing to the jurisprudence of this State and would add only to the length of this opinion. They do not reflect reversible error.

The entire records have been reviewed and no reversible error appears.

The judgments are affirmed.

---

this Court at the same time. Article 40.09, Section 5, V.A.C.C.P., provides that a party desiring to have included in the record a transcription of the notes of the reporter shall have the responsibility of obtaining such transcription to the Clerk in duplicate.

The statute is not clear how many transcriptions of such notes are required in this Court where there is more than one applicant. In the future cases where the records reach this Court at the same time, only one transcription of the reporter's notes of the joint trial will be required and the cases to the contrary under previous statutes will not apply. This will save expenses on behalf of appellants and the State.