**Santana YANEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 079-84.**

Court of Criminal Appeals of Texas, En Banc.

Sept. 26, 1984.

Tomas Garza, Lubbock, for appellant.

Russell L. Carroll, Former Dist. Atty., Belton, Norman Arnett, Dist. Atty., Sweetwater, Andrew Ottaway, Asst. Dist. Atty., Colorado City, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

TEAGUE, Judge.

The Eastland Court of Appeals, in a unanimous opinion by Justice Raleigh Brown, ordered the conviction of Santana Yanez, appellant, reversed because the trial court failed to grant the oral motion to shuffle the jury panel that counsel for appellant had made and urged. See *Yanez v. State*, —— S.W.2d —— (Tex.App.—Eastland 1983). The record reflects that the motion to shuffle was made immediately after the trial court had "screened" the prospective jurors. We granted the State's petition for discretionary review to answer the following question: For purposes of determining whether a defendant's motion to shuffle the names of the members of the jury panel assigned to his case is timely urged, when does the voir dire examination of the jury panel commence?

The record reflects that immediately after it had been determined which persons would make up the jury panel, appellant's counsel moved to have the names of those persons shuffled. Prior thereto, the trial judge had the members of the jury panel sworn. Thereafter, he tested their qualifications, presumably in accord with the provisions of Art. 35.12, V.A.C.C.P., after which the clerk in open court "drew—we tore the names off [the jury list], placed them in a box, shuffled them up, and the Bailiff and I—the Bailiff drew them out of the box and I typed them on the list." After this occurred, counsel for appellant moved to have the names of the prospective jurors shuffled. Counsel for appellant, who has, as does his client, a Mexican-American surname, also stated into the record that the reason he wanted the names of the members of the jury panel shuffled was because there were only four Mexican-Americans on the jury panel of 46 persons. In light of the fact that the four Mexican-Americans occupied positions numbered 25, 38, 42, and 45, we find his request was a reasonable one. In the usual order of things, prospective juror num-

bered 25 was the only one of the four who stood a reasonable chance of being selected to be a member of the jury that would judge the facts of appellant's cause. The record does not reflect whether any of the Mexican-Americans served on appellant's jury.

The prosecuting attorney objected to counsel's motion to shuffle and the trial judge denied the motion.

Appellant was thereafter tried and convicted by the jury for the offense of felony possession of marihuana. The same jury assessed appellant's punishment at four (4) years' confinement in the penitentiary.

On appeal, the court of appeals ordered appellant's conviction reversed. It found that appellant's request for a shuffle was timely urged, and then held that the trial court committed reversible error when it failed to grant the motion to shuffle. We agree with its holdings.

There appears to be no disagreement with the principle of law announced by this Court that a motion to shuffle the names of the members of the jury panel must be urged prior to the commencement of the voir dire examination of the members of the jury panel. See *Latham v. State*, 656 S.W.2d 478, 479 (Tex.Cr.App.1983). There also appears to be no disagreement with the principle of law announced by this Court that a motion to shuffle the names of the members of the jury panel that is urged by the accused after the voir dire examination of the members of the jury panel has commenced is untimely and need not be granted by the trial judge. *Latham v. State*, supra, at page 479.

However, there is disagreement over just when the voir dire examination of the prospective jurors actually commences.

■ We need not repeat here what has been stated in decisions of this and other courts as to what purpose and function the voir dire examination of the prospective jurors serves. It is sufficient to state that the objective of this phase of the voir dire process is to cause to be assembled a competent, fair, impartial, and unprejudiced

jury to judge the facts of the case. Because the cases are too numerous to cite on this subject, we will simply refer the reader to 34 *Texas Digest 2d*, Jury Keys 131(1); 131(2); 131(3); 131(4); 131(7). See, however, *post.*

Although much has been written on what the purpose and function the voir dire examination process as a whole entails and serves, our research reveals that very little has been written on just when the phase of the voir dire that pertains to the interrogation and examination of the members of the jury panel commences.

Several members of this Court have expressed their views on the subject, although such views are reflected in an oblique, rather than a direct manner.

Presiding Judge Onion of this Court appears to have adopted the average trial lawyer's usual understanding of just when the voir dire examination of the prospective jurors commences. In several opinions he has authored, he has made the following statement: "At the commencement of the voir dire examination of the jury panel the court, over objection by appellant, limited both sides to thirty (30) minutes apiece to interrogate the jury panel," *Barrett v. State*, 516 S.W.2d 181, 182 (Tex.Cr.App. 1974) (Dissenting Opinion), thus implying that the commencement of the voir dire examination of the members of the jury panel occurs when the prosecuting attorney commences to question the members of the jury panel. Also see *Homan v. State*, 662 S.W.2d 372, 373–74 (Tex.Cr.App.1984), in which Presiding Judge Onion made the following statement: "The record reflects that at the commencement of the voir dire examination of the jury panel for the case, the prosecutor made clear-cut and concise statements regarding the principles of the law applicable to the trial of a criminal case ..." Also see *Ring v. State*, 450 S.W.2d 85 (Tex.Cr.App.1970). The views of the author of this opinion are in accord with those of Presiding Judge Onion. See *Whitaker v. State*, 653 S.W.2d 781, 783 (Dissenting Opinion by Teague, J.); *Gentry v. State*, 640 S.W.2d 899, 903 (Tex.Cr.App.

1983) (Dissenting Opinion by Teague, J.) Judge McCormick of this Court appears to share these same views. See *Revia v. State*, 649 S.W.2d 625 (Tex.Cr.App.1983) (Motion for change of venue is timely filed if filed prior to the commencement of the examination of the jury panel by the judge or the prosecuting attorney.) Judge Clinton also appears to agree with the above judges as to when the voir dire examination of the jury panel commences. See *Hicks v. State*, 664 S.W.2d 329, 330 (Tex.Cr.App. 1984) (Concurring Opinion), in which he stated the following: "... addressing the jury panel at commencement of voir dire, the trial judge pointed out and instructed its members as follows: 'This is a case charging capital murder.' The law provides ..." *Hicks v. State*, supra, at page 330.

Our research reveals that when it was a court of civil appeals, the Corpus Christi Court of Appeals, see *Central Power & Light Company v. Martinez*, 493 S.W.2d 903 (Tex.Civ.App.—Corpus Christi 1973), and the then Austin Court of Civil Appeals, see *The Atchison, Topeka and Santa Fe Railway Company v. Ham*, 454 S.W.2d 451 (Tex.Civ.App.—Austin 1970), appear to have had the same views that Presiding Judge Onion, Judge McCormick, Judge Clinton, and the author of this opinion have.

However, under the present intermediate court system of this State, courts of appeals of this State are not in agreement as to just when the voir dire examination of the jury panel commences.

In this cause, the Eastland Court of Appeals, in making the determination of just when the voir dire examination commenced, excluded the following periods of time: when the trial judge made the determination of what jurors who had been summoned to appear were in fact present for jury duty; the determination whether to grant any excuses; the excusing of those persons who had been summoned who claimed their exemptions; and the testing of the qualifications of those prospective jurors who were then present.

In *Thomas v. State*, 624 S.W.2d 383 (Tex. App.—Ft. Worth 1981) (No P.D.R.), the Fort Worth Court of Appeals, in accordance with this Court's decisions, held that a motion to shuffle by the defendant was timely urged in that cause because it was made "prior to the commencement of voir dire." (385).

However, in *Brown v. State*, 639 S.W.2d 505 (Tex.App.—Ft. Worth 1982), (Appellant's P.D.R. Refused), the Fort Worth Court of Appeals explicated on what "prior to the commencement of voir dire" meant and made the determination that the voir dire examination of the jury panel commenced when the trial judge started asking questions of the prospective jurors as to their qualifications, or when it explained to them the concepts of reasonable doubt, burden of proof, indictments, and the presumption of innocence.

The Dallas Court of Appeals, however, appears to be in accord with the holding that the Eastland Court of Appeals made in this cause. In *Holman v. State*, 636 S.W.2d 18 (Tex.App.—Dallas 1982) (State's P.D.R. Refused), that court rejected the notion that the distribution of the lists of names of the members of the jury panel to the respective attorneys was tantamount to the commencement of the voir dire process.

In *Archibald v. State*, 629 S.W.2d 67 (Tex.App.—Dallas 1982) (State's P.D.R. Refused), the Dallas Court, without expressly stating when the voir dire examination of the jury panel commenced, impliedly held that it did not commence until the jury panel was seated in the courtroom.

■ We find that part of the difficulty in deciding just when the voir dire examination of the jury panel commences lies in the fact that the term "voir dire examination" is a rather broad general term.

*Black's Law Dictionary* defines the term, "voir dire," to mean the following: "To speak the truth. This phrase denotes the preliminary examination which the court may make of one presented as a witness or juror, where his competency ... is objected to." *Black's Law Dictionary*

1412 (5th ed. 1979). Also see *The American Heritage Dictionary of the English Language* 1435 (1973) and *Webster's New Collegiate Dictionary* 1302, each of which similarly defines the term, "voir dire." The word "competent," as used in the context of the voir dire examination of the summoned jurors, means to make the determination whether a prospective juror is legally qualified to serve as a juror. *Webster's New Collegiate Dictionary*, supra, 227.

From records in our archives we learn that the voir dire process in Texas is not uniform throughout the State. In our larger counties, citizens who are summoned for jury duty are usually advised to first report to a central jury room, where those who appear are then tested by a judge, who may be a judge other than the judge who will preside over the defendant's cause. That judge makes the determination whether any of those persons present are under the law disqualified to serve as jurors. He also hears excuses from persons as to why they should not have to serve at that time, as well as hearing from persons who have lawful exemptions. After the person summoned for jury duty has passed this phase, he is then permitted to become a member of a jury panel. Thus, in our larger counties, once the jury panel arrives in the assigned courtroom, its members presumably have been screened by some member of the judiciary.

However, in our smaller counties, the screening process may be slightly different simply because there may be only one district court in the county.

Nevertheless, we find that there are two things that the larger and smaller counties have in common. First, the first phase of the voir dire process is used by all trial judges to eliminate persons who should not or cannot serve as jurors, or are legally exempt from serving and want to claim their exemption. Lastly, the second phase of the voir dire process relates to examination and interrogation by the trial judge, the prosecuting attorney, and the defendant or his counsel in order to assist the defendant or his counsel and the prosecuting attorney in challenging prospective jurors for cause, so that, in theory at least, a competent, fair, impartial, and unprejudiced jury may be seated. Presiding Judge Onion has pointed out that the phase of the voir dire that involves the examination and interrogation of the prospective jurors by counsel for both sides is the opportunity for counsel to scrutinize the prospective jurors and accumulate information on each of them, "to the end that he may form his own conclusion ... as to whether in counsel's judgment, [the prospective juror] would be acceptable to him or whether, on the other hand, he should exercise a peremptory challenge to keep [the prospective juror] off the jury." *De La Rosa v. State*, 414 S.W.2d 668, 671 (Tex.Cr.App.1967).

■ We find that we are in agreement with the implicit holding the court of appeals made in this cause, that the phase of the voir dire process that involves the examination and interrogation of the prospective jurors does not commence until it is first determined just which persons will be on the jury panel for the case, and they are seated in the courtroom.

Art. 35.11, V.A.C.C.P., provides:

The trial judge, upon demand of the defendant or his attorney, or of the State's counsel, shall cause the names of all the members of the general panel drawn or assigned jurors in such case to be placed in a receptacle and well-shaken, and the clerk shall drawn therefrom the names of a sufficient number of jurors from which a jury may be selected to try such case, and such names shall be written, in the order drawn, on the jury list from which the jury is to be selected to try such case, and write the names as drawn upon two slips of paper and deliver one slip to the State's counsel and the other to the defendant or his attorney.

Because it would be impossible in many instances to permit a shuffle of all the names of those persons who had been summoned and appeared for jury service, this Court has restricted the right to a shuffle of the names of those persons who make

up the jury panel or jury panels which are assigned to and seated in the courtroom where the accused person's cause will be heard. E.g., *Boatright v. State*, 472 S.W.2d 765, 769 (Tex.Cr.App.1971).

■ Thus, a shuffle of the names of the persons who will make up the jury panel cannot take place until it is first determined just which persons will make up the jury panel for the case, and they are seated in the courtroom.

In the Practice Commentary to Art. 35.-11, supra, that he authored, Presiding Judge Onion of this Court made the following observation: "This article gives recognition to a commonly used practice, and apparently seeks uniformity of procedure in this regard throughout the State. See old Articles 626, 627, and 628."

Recently, in *Hall v. State*, 661 S.W.2d 113, 116 (Tex.Cr.App.1983), this Court made the following holding: "We therefore hold that in capital murder cases which do not involve a special venire . . ., when timely and properly requested, the accused is entitled to have the names of those persons assigned to and seated in the courtroom where the cause is to be heard shuffled or redrawn." We also pointed out in *Hall v. State*, supra, that, excepting the situation involving a special venire, there is not any meaningful distinction between a jury panel assigned to be voir dired in a capital murder case and a jury panel assigned to be voir dired in a non-capital murder case. However, in *Hall v. State*, supra, we did assume that prospective jurors· who made up a jury panel had been previously screened; thus, we erroneously assumed that in all cases those persons who make up a jury panel will have been already determined to be legally qualified to serve as jurors in the case. We now find that such assumption might not be applicable throughout the State, especially in our smaller counties.

■ Nevertheless, one principle of law applicable to criminal cases tried in both large and small counties of this State is that, subject to reasonable restrictions and limitations by the trial court, the right of a defendant to examine and interrogate the prospective jurors is guaranteed by Art. 1, Sec. 10, of the Texas Constitution. *Cook v. State*, 398 S.W.2d 284, 288 (Tex.Cr.App. 1966). We also point out that the Legislature has enacted a statute that further guarantees this right. See Art. 35.17, V.A. C.C.P.

■ By the provisions of Art. 35.11, supra, the defendant is also given the statutory right to have shuffled the names of the prospective jurors who make up the jury panel from which will come the jury that will judge the facts of his case. In this regard, we find that Texas appears to be unique in that our research reveals that it is the only State of the Union that gives to the defendant or his attorney or the prosecuting attorney the perogative of whether or not there will be a shuffle or redrawing of the names of the members of the jury panel assigned to the defendant's case. See 47 *Am.Jur.2d*, under "Jury," and 50 *C.J.S.*, under "Juries."

We also find that Art. 35.11, supra, has historical roots in the jurisprudence of this State, see *Willson's Texas Criminal Statutes* (1888 Edition); *White's Code of Criminal Procedure* (1895 Edition). But for slight changes in the wording, the present statute is worded much the same as its precursors were worded.

■ The right to have the names of the members of the jury panel shuffled or redrawn, however, is not of constitutional dimension, see *Bellah v. State*, 415 S.W.2d 418 (Tex.Cr.App.1967); *Harris v. Estelle*, 487 F.2d 1293 (5th Cir.1974), nor is it mandatory that the names of the prospective jurors be shuffled or redrawn. Such right to a shuffle or redrawing of the names of the members of the jury panel may be waived, *Buie v. State*, 1 Tex.Rep. 452 (1876); *McMahon v. State*, 17 Tex.Rep. 321 (1884), by a failure to make a timely request for a shuffle. *Overton v. State*, 490 S.W.2d 556 (Tex.Cr.App.1973).

■ This Court has often held that if the accused person makes a timely request for

a shuffle of the names of the members of the jury panel, and such request is refused or denied by the trial judge, such act of the trial court is not only error, it is automatic reversible error. Harm need not be shown or established. See *Hall v. State*, supra, and the cases cited therein at page 115, and *Latham v. State*, supra, and the cases cited therein at page 479. Also see *Clark v. State*, 608 S.W.2d 667 (Tex.Cr.App.1980); *Roberson v. State*, 582 S.W.2d 422 (Tex.Cr. App.1979); *Dynes v. State*, 479 S.W.2d 676 (Tex.Cr.App.1972); *Johnson v. State*, 467 S.W.2d 247 (Tex.Cr.App.1971); *Adams v. State*, 50 Tex.Cr.R. 586, 99 S.W. 1015 (1907). We reaffirm the above principles of law.

We find that the provisions of Art. 35.11, supra, are quite clear and also find that when the Legislature enacted the statute it intended that an accused person or the prosecuting attorney, upon timely demand, has an absolute right to have the names of the members of the jury panel assigned to the case shuffled or redrawn. We also believe that Art. 35.11, supra, should be read in conjunction with Art. 35.17, V.A.C. C.P., which provides for the voir dire examination "of prospective jurors." We are unable to understand in context how a person who has been summoned to serve as a juror but who has not yet been determined to be qualified to serve as a juror can at that time be a true "prospective juror."

■ Furthermore, it is the trial court, not the defendant, his attorney, or the prosecuting attorney, who has the responsibility to make the determination whether a person is qualified as a matter of law to serve as a juror. See Art. 35.12, supra.

■ For purposes of Art. 35.11, supra, we hold that the voir dire examination of the jury panel does not commence until all of the members of the jury panel have been shown to be qualified to serve as jurors in the cause and are seated in the courtroom. After it has been determined by the trial judge which persons will make up the jury panel from which will come the jury that will hear the case, and those persons have been seated in the courtroom, if the ac-

cused person then makes a motion, either orally or in writing, for a shuffle of the names of the members of the jury panel, such motion will be deemed to have been timely made. We repeat what this Court has previously held: It is automatic reversible error for the trial court to refuse a timely urged motion by the accused or his counsel to shuffle the names of the members of the jury panel.

■ In this instance, the record clearly reflects that appellant's counsel motioned the trial court for a shuffle of the names of the members of the jury panel immediately after it had been ascertained which persons would make up the jury panel from which would come the jury that would hear his client's cause. The jury panel was seated in the courtroom when counsel made and urged his motion. Under our above holding, counsel for appellant's oral motion to shuffle was timely made and should have been granted by the trial court. The court of appeals correctly held that, in not granting the motion, the trial court committed reversible error.

The judgment of the court of appeals is affirmed.

CLINTON, Judge, concurring.

What is implicit in the opinion of the Court ought to be made explicit: We reject the holding in *Brown v. State*, 639 S.W.2d 505 (Tex.App.—Fort Worth 1982), that "questioning as to the qualifications of the veniremen constitutes voir dire by the trial court" for purposes of determining when voir dire begins in relation to a demand by an accused or the prosecution for a "shuffle" under Article 35.11, V.A.C.C.P. An explanation is in order.

The provisions of Article 35.11, supra, were taken from former article 626, C.C.P. 1925. They originated in what was known as the "Interchangeable Jury Law," made applicable only in counties having three or more district courts. Acts 1917, 35th Leg., ch. 78, § 7, amended by Acts 1919, 36th Leg., ch. 6, § 1. See *Bell v. State*, 92

**70** ■ 

Tex.Cr.R. 342, 243 S.W. 1095 (1922). In pertinent part the statute read:

> "Provided, however, that the trial judge, upon the demand of any party to any case reached for trial by jury...shall cause the names of all the members of the general jury panel *available for service as jurors in such case,* to be placed in a hat or other receptacle and well shaken and said trial judge shall draw therefrom the names of a sufficient number of jurors from which a jury may be selected to try such case, and such names shall be transcribed on the jury list from which the jury is to be selected to try such case."[1]

Read literally that proviso means something other than how it came to be applied in actual practice. Indeed, the Court soon construed the language underscored above to exclude "those members of the general panel who had already been [tested,] detailed for service, and sent to other courts equally entitled" in that they "would not, and in the very nature of the case, could not, be 'available for service in this case,'" *Wright v. State,* 117 Tex.Cr.R. 93, 36 S.W.2d 511, 512 (1931). "The reason for the rule of the statute in question is to prevent any unfavorable order in the listing of the jurors and to give to the accused an equal chance to have jurors deemed favorable to him, at the head of the list." Thus, when the trial judge offered to "shuffle" the names of prospective jurors who remained in the court in which Wright was to be tried, he tendered that which the proviso intended: "the right to have drawn those jurors available for service in his case," *ibid.* The reason for the rule was thereby satisfied. Accord: *Hoebrecht v. State,* 126 Tex.Cr.R. 648, 72 S.W.2d 1100 (1934) and *Moore v. State,* 132 Tex.Cr.R. 403, 105 S.W.2d 250 (1937); see also *De Joyas v. State,* 141 Tex.Cr.R. 520, 150 S.W.2d 254 (1941).

When the code of criminal procedure was revised in 1965 article 626 and related arti-

cles were melded into Article 35.11, supra, in recognition of "a commonly used practice" and to provide "uniformity of procedure in this regard throughout the State," Special Commentary to Article 35.11. Though not always citing earlier cases the Court adhered to their teachings in, e.g., *Gonzales v. State,* 468 S.W.2d 85, 86, 87 (Tex.Cr.App.1971); *Dynes v. State,* 479 S.W.2d 676 (Tex.Cr.App.1972). It held that "(t)he right to have the jury panel assigned to a case *redrawn* is clearly provided for in Art. 35.11," and that harm need not be shown when that right is denied. *Woerner v. State,* 523 S.W.2d 717, 718 (Tex.Cr.App. 1975).

Contemporaneously with *Woerner v. State,* supra, the Court noticed that Article 35.11 "is silent as to what point in time in the trial of a case the trial court must honor the request... to shuffle," *Alexander v. State,* 523 S.W.2d 720, 721 (Tex.Cr. App.1975). Upon analyzing relatively recent decisions it came to the conclusion that a demand must be made prior to voir dire examination, partly because otherwise "it would permit such an election to be based upon information already elicited on voir dire," *id.,* at 721. When thus timely made it is error to deny a motion to shuffle. *Davis v. State,* 573 S.W.2d 780, 781 (Tex.Cr.App.1978).

The majority resorts to dictionary definitions of voir dire and immediately finds that there are two "phases of the voir dire process:" first, a testing of qualification pursuant to Article 35.12, V.A.C.C.P., and, second, such examination as may be made by the trial judge relating to grounds for a challenge for cause. However, by its enactment of Article 35.17, V.A.C.C.P., the Legislature perceived voir dire as that examination conducted by the prosecution and defense. Thus, in its original terms, not substantially altered by amendments made in 1973, the trial court may direct counsel to "conduct the voir dire examination of prospective jurors in the presence of the entire panel" in an ordinary case; in a

---

**1.** All emphasis is supplied throughout by the writer of this opinion unless otherwise indi-

cated.

capital felony case, upon demand either party "is entitled to examine each juror on voir dire individually and apart from the entire panel..." That perception is consistent with a general proposition expressed in 35 Tex.Jur.2d § 97, at 147: "Under our practice the right to interrogate veniremen on their voir dire is not open to question." *Reich v. State*, 94 Tex.Cr.R. 449, 251 S.W. 1072, 1073 (1923) confirms that proposition.[2] Under Article 35.17, supra, only in a capital felony case is a trial judge authorized to propound questions concerning principles of reasonable doubt, burden of proof, return of indictment, presumption of innocence and opinion.

Accordingly, I would hold that voir dire examination commences when counsel for the State is recognized by the judge of the trial court for the purpose of addressing a panel of prospective jurors whose qualifications have been tested satisfactorily in accordance with Article 35.12, V.A.C.C.P. A demand made pursuant to Article 35.11 prior to that event is timely.

Therefore, I concur in the judgment of the Court.

---

**2.** In earlier times the phrase commonly used by experienced judges with reference to questioning prospective jurors was "examination on their voir dire." See, e.g., *Crow v. State*, 89 Tex.Cr.R. 149, 230 S.W. 148, 152 and 153 (1921); see also *Pendergrass v. State*, 121 Tex.Cr.R. 213, 48 S.W.2d 997, 998 (1932).