**In the Matter of S\_\_\_ C\_\_\_, Jr., A Juvenile, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 04–85–00226–CV.**

Court of Appeals of Texas, San Antonio.

July 9, 1986.

Rehearing Denied Aug. 29, 1986.

Don Fidler, San Antonio, for appellant.

Sam Millsap, Jr., W. Michael Hervey, San Antonio, for appellee.

Before CADENA, C.J., and BUTTS and CANTU, JJ.

## OPINION

CANTU, Justice.

Appeal is from a finding of delinquency. Appellant was charged by petition with having engaged in delinquent conduct by committing the offense of capital murder. Following an unfavorable jury trial, appellant was ordered committed to the Texas Youth Council.

We are favored with five points of error, some of which require a review of the evidence adduced.

The petition alleging delinquent conduct recites in pertinent part:

... on or about the 28TH day of DECEMBER, A.D., 1984, in the County of Bexar and the State of Texas, S____ C____, Jr., hereinafter called respondent, did then and there intentionally cause the death of an individual, namely: ISIDRO FELAN, hereinafter called complainant, by STABBING THE SAID IDIDRO FELAN WITH A KNIFE, and the said respondent did then and there intentionally cause the death of the said complainant while in the course of committing and attempting to commit the offense of ROBBERY upon THE SAID ISIDRO FELAN; ...

We begin with a summary of the facts.

On December 28, 1984, in San Antonio, appellant, a fourteen year old male, and four other male companions ranging in ages from fifteen to nineteen spent the day at appellant's house drinking beer and smoking marihuana. That evening at about 11:00 p.m. someone suggested that they "go roll a wetback" which meant that they were to go find an illegal alien to rob.

One of the youths left but the others, including appellant, agreed to go down to the business area along U.S. Highway 90 to search for a victim. Before leaving, how-

ever, appellant went inside his house and obtained a kitchen knife. One of the other youths, the fifteen year old X____ R____, carried a club-like stick.

As the group approached a nearby elementary school a figure was spotted walking along U.S. Highway 90. Appellant and his companions hid in the bushes and followed behind the subject in an effort to get closer to him. X____ R____ and appellant then broke from the group and ran towards the subject who in turn began to accelerate his pace.

X____ R____ began to beat upon the subject with the club as the subject, who was later identified as the complainant, attempted to elude his assailant. By this time appellant had caught up to X____ R____ who was still chasing and beating up on the complainant behind one of the business establishments on U.S. Highway 90. Appellant and X____ R____ then demanded money and cigarettes of the complainant at knife point. The complainant was then forced to remove his shoes in a search for money.

As a police officer drove by, appellant stabbed the complainant twice and ran off with X____ R____. The youths all gathered at a common meeting area and from there returned to appellant's house. The complainant died later as a result of two six inch deep wounds to the abdomen. Appellant subsequently, through a conversation, admitted to one of the other youths that he had stabbed someone two times while he was "rolling" him.

Appellant's first assignment of error complains of the trial court's refusal to grant his timely motion to shuffle and redraw the jury list.

Immediately following rulings on pretrial motions and before jury voir dire the following transpired.

THE COURT: Anything else?

(Defense Counsel)

MR. FIDLER: Looking at the jury list I will request a shuffle.

THE COURT: You have already had your shuffle by the computer. We have a local rule on that.

(Prosecutor)

MR. HERVEY: There has been a shuffle already.

THE COURT: It has been shuffled by computer and this is in random shuffled order done by the central jury room.

MR. FIDLER: I am requesting that the 32 jurors called down here, standing outside the courtroom, starting with Cathleen Rothen and ending with Robert Olivari—

THE COURT: The shuffle has already taken place. It was done by the computer and that is denied. Is there anything else?

MR. FIDLER: Judge, by shuffle do you mean—

THE COURT: I mean that it is totally random.

MR. FIDLER: In other words, these 32 individuals were picked at random?

THE COURT: Each up there was picked at random. This is a random selection.

(Prosecutor)

MR. JACKSON: Under the Civil Rules do the parties have a right to a second shuffle?

THE COURT: In my mind, no.

MR. FIDLER: Wait a minute. We're getting confused. This is a random list but there has been no request that this panel of 32 be shuffled. But if they were chosen at random, then I accept the court's explanation that it was random. But I think that I have the right to shuffle these 32 that were called.

THE COURT: That is denied ...

Rule 223, Texas Rules of Civil Procedure, provides in pertinent part:

...; provided, however, that the trial judge upon the demand of any party to any case reached for trial by jury, or of the attorney for any such party, shall cause the names of all the members of the general panel available for service as

jurors in such case to be placed in a receptacle and well shaken, and said trial judge shall draw therefrom the names of a sufficient number of jurors from which a jury may be selected to try such cause, and such names shall be transcribed in the order drawn on the jury list from which the jury is to be selected to try such case.

Appellant points out that the TEX.CODE CRIM.PROC.ANN. art. 35.11 is similar to Rule 223.

Article 35.11 provides:

The trial judge, upon the demand of the defendant or his attorney, or of the State's counsel, shall cause the names of all the members of the general panel drawn or assigned as jurors in such case to be placed in a receptacle and well-shaken, and the clerk shall draw therefrom the names of a sufficient number of jurors from which a jury may be selected to try such case, and such names shall be written, in the order drawn, on the jury list from which the jury is to be selected to try such case, and write the names as drawn upon two slips of paper and deliver one slip to the State's counsel and the other to the defendant or his attorney.

In criminal cases, it is error for the trial court to refuse a jury panel shuffle when timely requested under article 35.11. *Hall v. State,* 661 S.W.2d 113 (Tex.Crim.App. 1983) (en banc); *Latham v. State,* 656 S.W.2d 478 (Tex.Crim.App.1983) (en banc); *Davis v. State,* 573 S.W.2d 780 (Tex.Crim. App.1978); *Woerner v. State,* 523 S.W.2d 717 (Tex.Crim.App.1975).

In civil cases a trial court is specifically authorized by Rule 223 to have the jury list shuffled after the list is sent to the particular court if a party or his counsel makes timely request. This is so irrespective of the fact that the clerk's office has scrambled or shuffled the jurors' names prior to assignment of the list to a particular court. No error occurs if the trial court grants a right authorized by the rule. *Davis v. Huey,* 608 S.W.2d 944 (Tex.Civ.App.—Austin 1980), *rev'd on other grounds following remand,* 620 S.W.2d 561 (Tex.1981);

*Patterson v. East Texas Motor Freight Lines,* 349 S.W.2d 634 (Tex.Civ.App.—Beaumont 1961, writ ref'd n.r.e.).

Moreover, no error occurs if the request for a new shuffle is not timely made or if a party acquiesces in the jury selection without a request for shuffle. *Harrison v. Missouri-Kansas & T.R. Co. of Texas,* 89 S.W.2d 455 (Tex.Civ.App.—Dallas 1935, writ dism'd).

While article 35.11 has been held to mandate an automatic reversal without the need to show harm upon proper invocation and refusal by the trial court, *see Davis v. State, supra; Woerner v. State, supra,* Rule 223 has been subjected to application of the harmless error doctrine. *See Rivas v. Liberty Mutual Insurance Co.,* 480 S.W.2d 610 (Tex.1972).

The Court of Criminal Appeals, in *Adams v. State,* 50 Tex.Cr.R. 586, 99 S.W. 1015, 1016 (1907) stated:

Appellant has a right to be present when his jury is drawn, and the right to see that the list is drawn by the proper person and in accordance with law; and the court should, when this objection was made, have set aside the list already drawn, and then ordered the clerk to draw a new list for the trial of the case. It is no answer to this requirement of the statute to urge that no injury is shown; that appellant, by the means adopted, was furnished with a fair and impartial jury. We might go further, and say, according to this reasoning, the court might adopt any method outside of the statute which might secure a fair and impartial jury. The law has ordained a tribunal for the trial of criminal cases, and has provided the method of selecting a jury, and there is no authority to resort to any other method, and it is not incumbent on appellant to show that he suffered injury by the failure of the court to follow the statutory method.

*See also, Woerner, supra* at 718; *Moore v. State,* 132 Tex.Cr.R. 403, 105 S.W.2d 250 (1937).

On the other hand, in *Rivas* the Supreme Court took the position that under Rule 223 substantial compliance with the rule was all that was required. In holding that no inference of probable harm arose from a failure to grant a shuffle, the Court placed upon the complaining party the burden of showing harm.

The Court further denominated a violation of the rule as nonfundamental error subject to the harmless error standard of Rule 434, that is, that the error does not require reversal unless the denial was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case.

The Court reasoned that Rule 223 was simply designed to insure a random selection of jurors.

Coincidentally, both courts at one time followed the same statute with regard to shuffling of jury lists.

Vernon's Ann.Civ.Stat. art. 2138,[1] the immediate predecessor to Rule 223 and which contained the same language was derived from Vernon's Civ.Stat.Supp.1922 (Acts 1919, 36th Leg., Ch. 6, p. 6, § 1), known as the "Interchangeable Jury Law" was carried forward in Vernon's "Complete Texas Statutes" as articles 5158 to 5158½f inclusive.

The Court of Criminal Appeals at the time of the effective date of article 5158f interpreted the statute, as it applied to criminal cases, in the same manner as it now interprets article 35.11.

In *Bell v. State*, 92 Tex.Cr.R. 342, 243 S.W. 1095, 1097 (1922) the Court of Criminal Appeals stated:

We know of no reason, nor is any assigned, for upholding the refusal of the right to have the names drawn in the manner directed by this statute. It was requested. It was refused. A plain right given by law was denied. The case will be reversed.

*See also Huffhines v. State*, 94 Tex.Cr.R. 292, 251 S.W. 229 (1923).

The only civil case we are aware of which interpreted the pertinent portion of the "Interchangeable Jury Law" merely held that the right granted by the statute could be waived by inaction or by acquiescence. *See Harrison v. Missouri-Kansas & T.R. Co. of Texas, supra.*

It is recognized that there can be no conflict between the Supreme Court and the Court of Criminal Appeals. It is the duty of the former to follow the latter on questions of criminal law and the corresponding duty of the latter to follow the former upon questions of the civil law. *Commissioners' Court v. Beall*, 98 Tex. 104, 81 S.W. 526 (1904).

Since the repeal of article 2138 by the promulgation of the Rules of Civil Procedure and the enactment of articles 626, 627 and 628 of the Texas Code of Criminal Procedure of 1925, the predecessors to article 35.11, each court now looks to its corresponding rule and applies its own construction without regard to the other court's views on the matter.

The instant case arises as a delinquency proceeding under chapter 51 of the Texas Family Code.

Section 51.01 provides in pertinent part:

This title shall be construed to effectuate the following public purposes:

\* \* \* \* \* \*

(5) to provide a simple judicial procedure through which the provisions of this title are executed and enforced and in which the parties are assured a fair hearing and their constitutional and other legal rights recognized and enforced.

Section 51.09 of the Family Code preserves for the minor all the rights granted by the Family Code as well as those conferred by the laws and constitution of this State and of the United States.

However, juvenile matters are civil in nature and are governed, so far as practicable, by the Rules of Civil Procedure. *In re R.A.B.*, 525 S.W.2d 892 (Tex.Civ.App.—Corpus Christi 1975, no writ). Moreover, the

---

1. Repealed by Rules of Civil Procedure, Acts 1939, 46th Leg. p. 201, § 1.

Code of Criminal Procedure does not apply, *Yzaguirre v. State,* 427 S.W.2d 687 (Tex. Civ.App.—Corpus Christi 1968, no writ) until the juvenile court waives jurisdiction in a transfer proceeding. *See* Section 54.02.

While we may agree with appellant that the Court of Criminal Appeals offers the better reasoning in the construction of its statute than does the Supreme Court of its rule, still the proceeding before us is a civil one with criminal overtones. Unless we are prepared to hold that a refusal to shuffle the jury list has transgressed a fundamental right of appellant secured by statute or by constitution we can not say that the trial court reversibly erred in its refusal to grant appellant's request.

■ In the instant case appellant does not urge any harm as a result of the court's refusal to grant the relief prayed for. Since the Supreme Court's interpretation of Rule 223 does not permit us to infer that probable harm arose, the burden remained on appellant to show harm. We hold that under Rule 223 there was substantial compliance by the trial court and that in a juvenile proceeding that is all that is required. Absent some showing that the trial court's failure to shuffle was reasonably calculated to cause and probably did cause the rendition of an improper judgment, reversal is not mandated. *Rivas v. Liberty Mutual Insurance Co., supra,* TEX.R.CIV.P. 434.

Appellant's first point of error is overruled.

Point of error number two complains of the trial court's refusal over timely and proper objection to instruct the jury that a State's witness was an accomplice as a matter of law whose testimony required corroboration.

At trial the witness A____ H____ testified that he, appellant and others had discussed "rolling a wetback" prior to the offense. Later appellant, A____ H____, and two others went to a location near Lincoln Elementary School where, after a short time, they observed a man walking down the street. The four ran into some bushes. Appellant and X____ R____ then assaulted the man as previously detailed. A____ H____ remained within viewing distance but did not otherwise participate any further, having allegedly given up his intent to participate.

Appellant requested instructions that A____ H____ was an accomplice as a matter of law and also sought a finding from the fact finder that A____ H____ was an accomplice based upon the facts presented. The jury was instructed on the latter. Appellant now insists that A____ H____ was an accomplice as a matter of law.

The following instruction was requested by appellant:

You are instructed that A____ H____ was an accomplice, if any offense was committed as alleged in the petition, and you cannot convict. [sic] the respondent upon his testimony unless you first believe that his testimony is true and shows the guilt of the respondent as charged in the indictment [sic], and then you cannot convict [sic] the respondent unless the accomplice's testimony is corroborated by other evidence tending to connect the respondent with the offense charged, and the corroboration is not sufficient if it merely shows the commission of an offense, but it must tend to connect the respondent with its commission.

Therefore, bearing in mind that A____ H____ was an accomplice, if any offense was committed, you are further instructed that you cannot find the respondent guilty of the offense charged against him upon A____ H____'s testimony unless you first believe that said testimony is true and that it shows the respondent is guilty as charged in the petition; and then you cannot convict [sic] the respondent unless you further believe that there is other evidence in the case outside of the evidence of A____ H____ tending to show, first, the commission of the alleged stabbing of Isidro Felan by the Respondent, second, that the Respondent, at the time he stabbed the deceased, if he did, was in the course of committing or attempting to commit the

offense of robbery, and third, that he stabbed the deceased with the specific intent to kill him and even then, before you can convict [sic] the defendant of the offense charged, you must believe, from all the evidence, beyond a reasonable doubt, that the defendant is guilty.

In support of his requested instruction appellant argued that an accomplice charge required an instruction that corroboration must exist as to all the elements that make the offense a capital murder case. The requested instruction, in fact, follows the reasoning advanced by appellant.

In *Fortenberry v. State*, 579 S.W.2d 482 (Tex.Crim.App.1979) (en banc) and again in *County v. State*, 668 S.W.2d 708 (Tex.Crim. App.1984) (en banc) the Court of Criminal Appeals held that if a conviction for the offense of capital murder is based upon testimony of an accomplice witness, and the accused requests, the trial judge is required to instruct the jury that the accomplice witness' testimony must be corroborated as to the specific elements that make the crime of murder capital murder. Appellant obviously relied upon *Fortenberry* and *County* in formulating his requested instruction.

On May 7, 1986, the Court of Criminal Appeals in *Holladay v. State*, 709 S.W.2d 194, repudiated the reasoning in *Fortenberry* and *County* and expressly overruled them.

The instruction approved of in *Holladay* is taken from McCLUNG, JURY CHARGES FOR TEXAS CRIMINAL PRACTICE, pp. 225–226 (Rev. ed. 1985). It is substantially the same if not identical to that given the jury on the accomplice as a factual issue instruction.

Under the reasoning in *Holladay*, the trial court would not have erred in refusing the tendered requested instruction.

A requested instruction which does not pronounce a correct statement of law is properly refused. *Consolidated Underwriters v. Wright*, 408 S.W.2d 140 (Tex.Civ. App.—Houston 1966, writ ref'd n.r.e.); *Swearingen v. Brown*, 195 S.W.2d 724 (Tex.Civ.App.—Beaumont 1946, writ ref'd n.r.e.).

■ Nonetheless, the trial court was not required to instruct on accomplice as a matter of law unless the evidence established that A⎯⎯ H⎯⎯ was an accomplice as a matter of law. *Arney v. State*, 580 S.W.2d 836 (Tex.Crim.App.1979).

An accomplice is someone who participated with another before, during, or after the commission of a crime. One is not an accomplice if he cannot be prosecuted for the offense with which the accused is charged. *Brooks v. State*, 686 S.W.2d 952 (Tex.Crim.App.1985) (en banc).

If the evidence raises an issue or creates a conflict as to whether a witness is an accomplice, it is sufficient if the issue is submitted to the jury even though the evidence preponderates in favor of the conclusion that the witness was an accomplice as a matter of law. *Brown v. State*, 640 S.W.2d 275 (Tex.Crim.App.1982).

In order for the witness to be prosecuted for the offense of capital murder, he would have to be prosecuted as a party to the offense. TEX.PENAL CODE ANN. § 7.02 (Vernon 1974).

Section 7.02(a)(2) provides:

(a) A person is criminally responsible for an offense committed by the conduct of another if:

(2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids or attempts to aid the other person to commit the offense . . .

The facts in this case reveal that A⎯⎯ H⎯⎯ participated in a discussion involving the anticipated robbery of a wetback. A⎯⎯ H⎯⎯ further accompanied appellant and others in search of a victim. Beyond that his participation is sketchy. By his own testimony, and so far as the evidence demonstrates, A⎯⎯ H⎯⎯ abandoned any intent to further participate.

Whether these acts constitute promotion, assistance or encouragement to commit the offense so as to render A⎯⎯ H⎯⎯ a

party must be determined as a factual issue by the jury.

It is clear that A⸺ H⸺ was not an accomplice as a result of his mere presence at the scene of the crime. *Russell v. State*, 598 S.W.2d 238 (Tex.Crim.App.1980) (en banc), *cert. denied*, 449 U.S. 1003, 101 S.Ct. 544, 66 L.Ed.2d 300 (1980).

Nor was he rendered an accomplice because he knew of the crime but failed to disclose it or even concealed it. *Easter v. State*, 536 S.W.2d 223 (Tex.Crim.App.1976).

Where the witness' status as a participant is not conclusively established, that is where doubt remains, the question of complicity should be resolved as a factual issue. *Caraway v. State*, 550 S.W.2d 699 (Tex.Crim.App.1977); *Colunga v. State*, 527 S.W.2d 285 (Tex.Crim.App.1975).

Appellant's second point of error is overruled.

■ In the next two points of error appellant complains of the trial court's refusal to require the jury to consider whether two of the State's witnesses' testimony was corroborated as to the specific elements that make the offense a capital offense, in the event the jury found the witnesses to be accomplice witnesses. Specific reliance is had upon *County v. State, supra; Fortenberry v. State, supra;* and *Granger v. State*, 605 S.W.2d 602 (Tex.Crim.App.1980) (en banc). As heretofore noted, the rationale behind these cases has now been expressly repudiated in *Holladay v. State, supra*.

The instructions on accomplice testimony given to the jury was more than adequate to satisfy the requirements of TEX.FAM. CODE § 54.03 (Vernon Supp.1986); *Cf.* TEX.CODE CRIM.PROC.ANN. art. 38.14.

Appellant's third and fourth points of error are overruled.

■ In his fifth and final point of error appellant complains of the trial court's failure to instruct the jury on the lesser included offense of murder.

In determining whether an accused is entitled to a charge on a lesser included

offense a two prong test has been adopted. First, the lesser offense must be included within the proof necessary to establish the greater offense. Second, there must be some evidence in the record that if the defendant is guilty, he is guilty of only the lesser offense. *Cordova v. State*, 698 S.W.2d 107 (Tex.Crim.App.1985) (en banc).

Without directing us to any evidence which indicates that if guilt is established by the proof, only guilt of murder as a lesser included offense is established, appellant proffers *Ex parte McClelland*, 588 S.W.2d 957 (Tex.Crim.App.1979) (en banc) as authority for his argument.

*Ex parte McClelland* offers no support for appellant's position. The case merely stands for the proposition that murder is a lesser included offense of capital murder and therefore the State may reduce the charge to the lesser included offense of murder. We do not quarrel with this proposition. However, whether an instruction on murder was required must be determined from the facts of each case on an individual basis. *Ex parte McClelland, supra*.

In the instant case, all the evidence demonstrates that appellant killed the deceased while he was obtaining money and other personal items from the deceased. Moreover, it is undisputed that the stabbing occurred in the course of "rolling" a man.

We find no evidence which tends to show appellant's guilt of only murder.

A charge on murder is not automatically mandated in a capital murder case simply because murder is a lesser included offense of capital murder. *Cordova v. State, supra*.

Appellant's point of error is overruled.

The judgment of the trial court is affirmed.